SWAIN, REFORMATORY SUPERINTENDENT *v.*
PRESSLEY

No. 75–811. Argued January 19, 1977—Decided March 22, 1977

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, and POWELL, JJ., joined, and in Part I of which BURGER, C. J., and BLACKMUN and REHNQUIST, JJ., joined. POWELL, J., filed a concurring opinion, *post*, p. 384. BURGER, C. J., filed an opinion concurring in part and concurring in the judgment, in which BLACKMUN and REHNQUIST, JJ., joined, *post*, p. 384.

*Solicitor General Bork* argued the cause for petitioner. With him on the brief were *Assistant Attorney General Thornburgh, Deputy Solicitor General Frey, Mark L. Evans, Paul L. Friedman, Shirley Baccus-Lobel,* and *Joseph S. Davies, Jr.*

*Mark W. Foster* argued the cause for respondent. With him on the brief were *Robert M. Weinberg* and *Frederick H. Weisberg.*

MR. JUSTICE STEVENS delivered the opinion of the Court.

Respondent is in custody pursuant to a sentence imposed by the Superior Court of the District of Columbia.[1] He has filed an application for a writ of habeas corpus in the United States District Court for the District of Columbia asking that court to review the constitutionality of the proceedings that

---

[1] He received concurrent sentences of 32–96 months and 20–60 months following his conviction of grand larceny and larceny from the District of Columbia Government, in violation of D. C. Code §§ 22–2201 and 22–2206 (1973). He is now on parole.

led to his conviction and sentence. The question presented to us is whether § 23–110 (g) of the District of Columbia Code [2] prevents the District Court from entertaining the application. [3]

[2] District of Columbia Code Ann. § 23–110 (1973) provides:

"(a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

"(b) A motion for such relief may be made at any time.

"(c) Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that (1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate.

"(d) A court may entertain and determine the motion without requiring the production of the prisoner at the hearing.

"(e) The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"(f) An appeal may be taken to the District of Columbia Court of Appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"(g) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

[3] In *Pernell* v. *Southall Realty*, 416 U. S. 363, 368 n. 4, we noted that a question of this nature remained to be resolved.

Congress enacted § 23–110 (g) as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 608; that Act created a new local court system and transferred in its entirety the Federal District Court's responsibility for processing local litigation to the Superior Court of the District of Columbia.[4] Section 23–110 of the Code established a procedure for collateral review of convictions in the Superior Court; the procedure is comparable to that authorized by 28 U. S. C. § 2255 for the United States district courts. Section 23–110 (g) provides:

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a

[4] See *Palmore* v. *United States,* 411 U. S. 389, 392–393, n. 2, and *Pernell* v. *Southall Realty, supra,* at 367–368, for a description of the statute and its background. Prior to reorganization, the jurisdiction of the local District of Columbia courts was extremely circumscribed. In regard to criminal cases, for instance, the local courts had jurisdiction only over misdemeanors and petty offenses, and this jurisdiction was concurrent with that of the United States District Court. This left the United States District Court and the United States Court of Appeals for the District of Columbia Circuit with jurisdiction over numerous local criminal and civil cases which were proving to be a great burden to those courts, diverting their energies from questions of national importance which require prompt resolution by the federal courts of the Nation's Capital. S. Rep. No. 91–405, p. 3 (1969).

The District of Columbia Court Reform and Criminal Procedure Act of 1970 was designed to alleviate these burdens by transferring general jurisdiction over local matters to the Superior Court of the District of Columbia and all appeals from that court to the District of Columbia Court of Appeals ("the Highest Court of the District"), thus creating a system of courts analogous to those found in the States. "This transfer will bring the jurisdiction of the U. S. Courts in the District of Columbia in line with the jurisdiction exercised by the Federal courts in the several States, and will give the local courts jurisdiction over all purely local matters." S. Rep. No. 91–405, *supra,* at 5.

motion for relief under this section *or that the Superior Court has denied him relief,* unless it also appears that the remedy by motion is inadequate or ineffective to test · the legality of his detention." [5]  (Emphasis added.)

On the authority of this provision, the District Court dismissed respondent's application.[6]  The Court of Appeals reversed.  Largely because of its doubts concerning the constitutionality of a statutory curtailment of the District Court's jurisdiction to issue writs of habeas corpus, the Court of Appeals construed the statute as merely requiring exhaustion of local remedies before a habeas corpus petition could be filed in the District Court.[7]  The Court of Appeals, unlike

---

[5] The comparable section, 28 U. S. C. § 2255, reads in pertinent part as follows:

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

[6] In its original order of dismissal the District Court stated that it "does not have jurisdiction over this matter, by virtue of 23 D. C. Code § 110 (g)."  Pet. for Cert. 66a.  Later, in response to a *sua sponte per curiam* order of the Court of Appeals, quoted in part, 169 U. S. App. D. C. 319, 321, 515 F. 2d 1290, 1292 (1975), the District Court concluded that respondent had not exhausted his remedies in the local court system.  Pet. for Cert. 67a–69a.

[7] The opinion of the Court of Appeals in this case, 169 U. S. App. D. C. 319, 515 F. 2d 1290 (1975), adopted the reasoning developed at length in its en banc decision in *Palmore* v. *Superior Court of District of Columbia,* 169 U. S. App. D. C. 323, 515 F. 2d 1294 (1975).  This Court granted the Government's petition for certiorari which consolidated for consideration both this case and *Palmore,* 424 U. S. 907, and set the cases for oral argument.  However, on the suggestion of the Solicitor General we vacated the judgment in *Palmore* and remanded that case to the Court of Appeals for further consideration in light of our recent decision in *Stone* v. *Powell,* 428 U. S. 465.  429 U. S. 915.  Palmore had challenged his conviction on Fourth Amendment grounds.

the District Court, concluded that respondent had exhausted his local remedies and thus remanded the case to the District Court for consideration of the merits. The Government's petition for certiorari which we granted, 424 U. S. 907, did not question the Court of Appeals' conclusion regarding exhaustion.[8]

## I

There are two reasons why § 23–110 (g) cannot fairly be read as merely requiring the exhaustion of local remedies before applying for a writ of habeas corpus in the District Court.

First, the statute expressly covers the situation in which the applicant has exhausted his local remedies, and requires that the application be denied in such a case. The statute provides that the application "shall not be entertained . . . by any Federal . . . court if it appears that . . . the Superior Court has denied [the applicant] relief." This unequivocal statutory command to federal courts not to entertain an application for habeas corpus *after* the applicant has been denied collateral relief in the Superior Court, is squarely at odds with the Court of Appeals' view that the statute deals only with the procedure the applicant must follow *before* he may request relief in the District Court.

Second, the language of § 23–110 (g) was deliberately patterned after 28 U. S. C. § 2255.[9] That section, enacted in

---

[8] After respondent's conviction was affirmed by the District of Columbia Court of Appeals, he filed a *pro se* motion for a new trial in the Superior Court alleging ineffective assistance of counsel. An order denying that motion was affirmed on appeal. While that appeal was pending, respondent filed a second motion in the Superior Court; although that court denied the motion on jurisdictional grounds, the Court of Appeals reached the merits and affirmed.

[9] The House Report on the Act noted that § 23–110 was "modeled on 28 U. S. C. § 2255 with only necessary technical changes." H. R. Rep. No. 91–907, p. 117 (1970). The Senate Report has almost identical language. S. Rep. No. 91–405, p. 38 (1969). Moreover, the two provisions, § 2255 and § 23–110, contain almost identical language.

1948, 62 Stat. 967, substituted a new collateral-review procedure for the pre-existing habeas corpus procedure. Prior to the adoption of § 2255, the district courts for the districts in which federal prisoners were confined entertained habeas corpus petitions; since 1948, collateral review has been available pursuant to § 2255 only in the districts in which the convictions were obtained. Thus, § 2255 created a new postconviction remedy in the sentencing court and provided that a habeas corpus petition may not be entertained elsewhere.[10] See *United States* v. *Hayman,* 342 U. S. 205. Just as § 2255 was intended to substitute a different forum and a different procedure for collateral review of federal convictions, § 23–110 (g) was plainly intended to achieve a parallel result with respect to convictions in the District of Columbia.

Notwithstanding the desirability of adopting a construction of the statute which would avoid the constitutional issue raised by respondent, we are convinced that the language of § 23–110 (g) is sufficiently plain to require us simply to read it as it is written.[11]

---

[10] Section 2255 allows an exception for the case in which the remedy is "inadequate or ineffective"; § 23–110 (g) contains the same exception. See *infra,* at 381.

[11] The Court of Appeals in *Palmore, supra,* at 328, 515 F. 2d, at 1299, gave special regard to "the principle of constitutional adjudication which makes it decisive in the choice of *fair alternatives* that one construction [which] may raise serious constitutional questions [be] avoided by another." *United States* v. *Rumely,* 345 U. S. 41, 45 (emphasis added). Along the same vein, Mr. Chief Justice Hughes has noted, "if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is *fairly possible* by which the question may be avoided." *Crowell* v. *Benson,* 285 U. S. 22, 62 (emphasis added). Both of these references to that "cardinal principle" of statutory construction contain the caveat that resort to an alternative construction to avoid deciding a constitutional question is appropriate only when such a course is "fairly possible" or when the statute provides a "fair alternative" construction.

Here the statute could not be more plain. It prohibits "any Federal . . . court" from entertaining a writ of habeas corpus if the applicant "has

## II

Respondent argues [12] that § 23–110 (g), if read literally, violates Art. I, § 9, cl. 2, of the United States Constitution, which provides:

"The Privilege of the Writ of Habeas Corpus shall not

---

failed to make a motion for relief" to the Superior Court or if "the Superior Court has denied him relief . . . ." Thus, the language of *United States* v. *Sullivan*, 332 U. S. 689, 693, is applicable:

"A restrictive interpretation should not be given a statute merely because Congress has chosen to depart from custom or because giving effect to the express language employed by Congress might require a court to face a constitutional question. And none of the foregoing cases, nor any other on which they relied, authorizes a court in interpreting a statute to depart from its clear meaning. When it is reasonably plain that Congress meant its Act to prohibit certain conduct, no one of the above references justifies a distortion of the congressional purpose, not even if the clearly correct purpose makes marked deviations from custom or leads inevitably to a holding of constitutional invalidity."

[12] The Court below in *Palmore*, 169 U. S. App. D. C., at 333–335, 515 F. 2d, at 1304–1306, also suggested the possibility that § 23–110 (g) might be unconstitutional because it denied persons convicted in the Superior Court equal protection of the laws. These persons must assert any collateral attack on their convictions before Art. I judges, whereas persons convicted under general federal law are allowed to attack their convictions before Art. III judges. But precisely the same classification is made with respect to the original trial and appeal process, which we have already held constitutional. *Palmore* v. *United States*, 411 U. S. 389. It is certainly reasonable to make the same classification for collateral-review purposes as for purposes of trial and direct review.

A rational basis for the classification is found in the purpose behind the Court Reform Act. As one proponent of the Act noted, the Act "establishes a complete court system [for the District of Columbia] . . . . It includes transfer of all, not some, 'local' jurisdiction to the new court," the Superior Court for the District of Columbia, thus maximizing "the potential of the courts" and minimizing "overlapping jurisdiction." Statement of Associate Deputy Attorney General Santarelli, Hearings on Court Reorganization, Criminal Law Procedures, Bail, and Public Defender Service, before Subcommittee No. 1 of the House Committee on the District of Columbia, 91st Cong., 1st Sess., 13 (1969, pt. 1). He saw the transfer

be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

His argument is made in two steps: (1) that the substitution of a remedy that is not "exactly commensurate" with habeas corpus relief available in a district court is a suspension of the writ within the meaning of the Clause; and (2) that because the judges of the Superior Court of the District of Columbia do not enjoy the life tenure and salary protection which are guaranteed to district judges by Art. III, § 1, of the Constitution, the collateral-review procedure authorized by § 23–110 (g) of the District of Columbia Code is not exactly commensurate with habeas corpus relief in the district courts.

The Government disputes both propositions. First, it contends that the constitutional provision merely prohibits suspension of the writ as it was being used when the Constitution was adopted; at that time the writ was not employed in collateral attacks on judgments entered by courts of competent jurisdiction.[13] Second, it contends that the procedure authorized by § 23–110 (g) is "exactly commensurate" with the pre-existing habeas corpus remedy.

---

of jurisdiction over "habeas corpus" as part of the overall transfer of local jurisdiction. *Id.*, at 14. For a discussion of the numerous and important purposes behind the enactment of § 2255, purposes much like those which motivated enactment of § 23–110, see *United States* v. *Hayman,* 342 U. S. 205, 210–219.

[13] THE CHIEF JUSTICE's concurring opinion reminds us that Congress has broadened the scope of the writ of habeas corpus beyond the limits that obtained during the 17th and 18th centuries; he cites us to the article in which Judge Friendly observed that "[w]hat Congress has given, Congress can *partially* take away." Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 171 (1970) (emphasis added). That observation is more cautious than the conclusion that Congress may *totally* repeal all post-18th century developments in this area of the law. In any event, in view of the narrow basis for our decision, we have no occasion to address the broad issue discussed by THE CHIEF JUSTICE.

We are satisfied that the statute is valid, but we do not rest our decision on either of the broad propositions advanced by the Government. We are persuaded that the final clause in § 23–110 (g) avoids any serious question about the constitutionality of the statute. That clause allows the District Court to entertain a habeas corpus application if it "appears that the remedy by motion is inadequate or ineffective to test the legality of [the applicant's] detention." Thus, the only constitutional question presented is whether the substitution of a new collateral remedy which is both adequate and effective should be regarded as a suspension of the Great Writ within the meaning of the Constitution. The obvious answer to this question is provided by the Court's opinion in *United States* v. *Hayman:*

> "In a case where the Section 2255 procedure is shown to be 'inadequate or ineffective,' the Section provides that the habeas corpus remedy shall remain open to afford the necessary hearing. Under such circumstances, we do not reach constitutional questions." 342 U. S., at 223 (footnote omitted).

The Court implicitly held in *Hayman,* as we hold in this case, that the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.

The question which remains is whether the remedy in the Superior Court of the District of Columbia created by § 23–110 is "inadequate or ineffective." We have already construed the remedy created by 28 U. S. C. § 2255 as the exact equivalent of the pre-existing habeas corpus remedy. *Hill* v. *United States,* 368 U. S. 424, 427.[14] Since the scope of the remedy provided

---

[14] We there stated: "Suffice it to say that it conclusively appears from the historic context in which § 2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy *exactly*

by § 23–110 is the same as that provided by § 2255, it is also commensurate with habeas corpus in all respects save one—the judges who administer it do not have the tenure and salary protection afforded by Art. III of the Constitution.[15]

We are fully cognizant of the critical importance of life tenure, particularly when judges are required to vindicate the constitutional rights of persons who have been found guilty of criminal offenses.[16] The relationship between life tenure and judicial independence was vigorously explained by Mr. Justice Douglas in his dissenting opinion in *Palmore* v. *United States,* 411 U. S. 389, 410–422. But, as the Court held in that case, the Constitution does not require that all persons charged

---

*commensurate* with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." 368 U. S., at 427 (emphasis added). See also *United States* v. *Hayman,* 342 U. S., at 219.

[15] In 1949, § 2255 was amended by inserting in the first paragraph of that provision "Court established by Act of Congress" for "Court of the United States." 63 Stat. 105. This was done to make "it clear that the section is applicable in the district courts in the Territories and possessions." H. R. Rep. No. 352, 81st Cong., 1st Sess., 18 (1949). The courts of the Territories are created under Art. I, not Art. III. *Palmore* v. *United States,* 411 U. S., at 402–403, and cases cited therein. Since that time, § 2255 motions made by persons convicted in the Territories have been heard by non-Art. III judges, and such a requirement has been deemed neither "inadequate [n]or ineffective." See *United States ex rel. Leguillou* v. *Davis,* 212 F. 2d 681 (CA3 1954). This situation, however, is slightly different from the present situation, in that a § 2255 motion made to a territorial court is reviewable in the United States courts of appeals, which are Art. III courts.

[16] We note that the respondent has not been deprived entirely of that protection. Under 28 U. S. C. § 1257 (3), this Court possesses jurisdiction to review final judgments of the District of Columbia Court of Appeals. Thus, an individual tried in the Art. I courts of the District of Columbia has two opportunities to seek review before this Court, whose Members do enjoy life tenure and salary protection—first, after affirmance of his conviction by the District of Columbia Court of Appeals, and second, after a judgment of that court resulting in the denial of relief under § 23–110.

with federal crimes be tried in Art. III courts.[17]   That holding necessarily determines that the judges of the Superior Court of the District of Columbia must be presumed competent to decide all issues, including constitutional issues, that routinely arise in the trial of criminal cases.  We must, therefore, presume that the collateral relief available in the Superior Court is neither ineffective nor inadequate simply because the judges of that court do not have life tenure.[18]

This conclusion is consistent with the settled view that elected judges of our state courts are fully competent to decide federal constitutional issues, and that their decisions must be respected by federal district judges in processing habeas corpus applications pursuant to 28 U. S. C. § 2254.  Normally a state judge's resolution of a factual issue will be presumed to be correct unless the factfinding procedure employed by the state court was not adequate.[19]   It is equally permissible to presume that the judges of the Superior Court of the District of Columbia will correctly resolve constitutional issues unless it has been demonstrated, in accordance with the final clause of § 23–110 (g), that the remedy afforded by that court is "inadequate or ineffective." [20]

---

[17] Indeed, as was noted by the majority in *Palmore*, "[v]ery early in our history, Congress left the enforcement of selected federal criminal laws to state courts and to state judges who did not enjoy the protections prescribed for federal judges in Art. III." 411 U. S., at 402.

[18] The same analysis applies to salary protections.  Moreover the salary level for judges of the Superior Court and judges of the District of Columbia Court of Appeals are determined at a rate equal to 90% of the salary levels accorded United States district judges and United States circuit judges, respectively.  D. C. Code Ann. §§ 11–703 (b), 11–904 (b) (1973).

[19] See 28 U. S. C. §§ 2254 (d) (2) and (3).

[20] In this case we have no occasion to consider what kind of showing would be required to demonstrate that the § 23–110 remedy is inadequate or ineffective in a particular case, or whether the character of the judge's tenure might be relevant to such a showing in a case presenting issues of extraordinary public concern.

Finding no reason to doubt the adequacy of the remedy provided by § 23–110, and having noted that its scope is commensurate with habeas corpus relief, we hold that § 23–110 (g) has not suspended the writ of habeas corpus within the meaning of Art. I, § 9, cl. 2.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

MR. JUSTICE POWELL, concurring.

I concur in the opinion of the Court. In view, however, of the separate opinion filed today by THE CHIEF JUSTICE, I write merely to make clear that I do not read Part II of the Court's opinion as being incompatible with the views I have expressed previously with respect to the nature and scope of habeas corpus. *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 250 (1973) (POWELL, J., concurring).

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE REHNQUIST join, concurring in part and concurring in the judgment.

I join Part I of the Court's opinion and concur in the Court's judgment. However, I find it unnecessary to examine the adequacy of the remedy provided by § 23–110 (g) for I do not consider that the statute in any way implicates the respondent's rights under the Suspension Clause, Art. I, § 9, cl. 2, of the Constitution.

The sweep of the Suspension Clause must be measured by reference to the intention of the Framers and their understanding of what the writ of habeas corpus meant at the time the Constitution was drafted. The scope of the writ during the 17th and 18th centuries has been described as follows:

"[O]nce a person had been convicted by a superior court of general jurisdiction, a court disposing of a habeas corpus petition could not go behind the conviction for any purpose other than to verify the formal jurisdiction of the

committing court." Oaks, Legal History in the High Court—Habeas Corpus, 64 Mich. L. Rev. 451, 468 (1966).

Thus, at common law, the writ was available (1) to compel adherence to prescribed procedures in advance of trial; (2) to inquire into the cause of commitment not pursuant to judicial process; and (3) to inquire whether a committing court had proper jurisdiction. The writ in 1789 was not considered "a means by which one court of general jurisdiction exercises post-conviction review over the judgment of another court of like authority." *Id.*, at 451.

Dicta to the contrary in *Fay* v. *Noia*, 372 U. S. 391 (1963), have since been shown to be based on an incorrect view of the historic functions of habeas corpus. *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 252–256 (1973) (POWELL, J., concurring). The fact is that in defining the scope of federal collateral remedies the Court has invariably engaged in statutory interpretation, construing what Congress has actually provided, rather than what it constitutionally must provide. See Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1268 (1970). Judge Friendly has expressed this view clearly:

> "It can scarcely be doubted that the writ protected by the suspension clause is the writ as known to the framers, not as Congress may have chosen to expand it or, more pertinently, as the Supreme Court has interpreted what Congress did." Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 170 (1970) (footnote omitted).

Since I do not believe that the Suspension Clause requires Congress to provide a federal remedy for collateral review of a conviction entered by a court of competent jurisdiction, I see no issue of constitutional dimension raised by the statute in question. Under this view of the case, I need not consider the important constitutional question whether the Suspension

386

Clause protects the jurisdiction of the Art. III courts. A doctrine that allowed transfer of the historic habeas jurisdiction to an Art. I court could raise separation-of-powers questions, since the traditional Great Writ was largely a remedy against executive detention. See P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1513–1514 (2d ed. 1973). However, I agree with Part I of the Court's opinion, namely that § 23–110 (g) was designed to preclude access to the District Court, not merely to assure exhaustion of local remedies and I would end the inquiry there. Congress has not provided access to the District Court and is under no compulsion to do so. I would therefore reverse the judgment on this basis.