**Paul H. NEAL, Appellant,**

v.

**Delbert JACKSON.**

No. 81–2364.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 9, 1982.

As Amended Nov. 9, 1982.

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA, Circuit Judges.

ON DENIAL OF SUGGESTION FOR REHEARING EN BANC

PER CURIAM.

ORDER

This Court having been requested by one of its members to rehear the captioned case *en banc,* and a majority of the judges in regular active service not having voted in favor of that suggestion, it is

ORDERED, by the Court, *en banc,* that the suggestion for rehearing *en banc* is denied and the Clerk shall issue the mandate forthwith.

Opinion on denial of suggestion for rehearing *en banc* filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge.

The remand of this case to the district court by the panel opinion, 684 F.2d 17, and its failure to decide many complex dispositive issues, creates what as a practical matter is essentially a certiorari proof disposition that most likely will not result in any further published opinion. With the case in

this context it is easy to overlook the fact that the opinion implicitly holds that the United States courts in the District of Columbia *have jurisdiction* of habeas corpus proceedings with respect to sentences imposed under the laws of the District of Columbia. This is contra to *Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) and I find other reasons why the judgment of the District Court should be affirmed by this court. I thus find it necessary, lest future readers believe the panel opinion states unchallenged law, to set forth my analysis of the case and my reasons for voting for *en banc* consideration.

I

Neal, a prisoner confined in the United States Penitentiary at Marion, Illinois, on November 19, 1981[1] filed a habeas corpus petition in the United States District Court for the District of Columbia. The petition presents the following factual situation: Neal was convicted of robbery in violation of D.C.Code § 22–2901 and sentenced by the Superior Court of the District of Columbia. In March 1977 he was confined at the Lorton Reformatory, under supervision of the D.C. Department of Corrections, and almost immediately in April 1977 he was transferred from the Lorton Reformatory to the Federal Penitentiary at Atlanta, Georgia without, according to his allegation, "being given the hearing he was entitled to [by the D.C.] Department Order No. 4810." Said Department Order is set forth in full as an Appendix hereto.

The cited Department Order provided for a hearing in *some cases* before transfer of a "sentenced offender." Sometime subsequent to his April 1977 transfer to the United States Penitentiary at Atlanta, Neal was transferred to the United States Penitentiary at Marion, Illinois where he is presently confined. Neal's November, 1981 petition attacks his 1977 transfer *to Atlanta* without prior hearing and claims therefore that "he is entitled . . . to be recommitted

---

1. A subsequent petition was filed on January 20, 1982. The allegations of both petitions are    considered.

to the D.C. Department of Corrections that he might complete his trade in welding prior to his eligibility for parole February 1983 because his needs would be best served by the programs there." *(Petition for Writ of Habeas Corpus).* The Petition can be denied on any of several grounds.

*First,* the United States courts are without jurisdiction to grant the writ because petitioner has not complied with D.C.Code § 23–110 which requires that *habeas corpus* relief be first sought in D.C. Superior Court.[2] *Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977); *Jackson v. Jackson,* 491 F.Supp. 445 (D.D.C.1980). The petition is a "collateral attack" on his sentence.[3] It is recognized in federal courts that the Great Writ of "*habeas corpus ad subjiciendum* involves a collateral attack on the process or judgment constituting the basis of the detention." *Goto v. Lane,* 265 U.S. 393, 401, 44 S.Ct. 525, 527, 68 L.Ed. 1070 (1924). To say that Neal was not attacking his "sentence" to Atlanta fails to recognize that the *place* of confinement, as designated by the Attorney General, is *part*

of the sentence as contemplated by the statute.[4] The scheme of the statute incorporates the place of confinement to be designated by the Attorney General as part of the sentence and the sentence is incomplete until the place of confinement is so designated. The designation by the Attorney General does not constitute the *execution* of the sentence—the execution of the sentence is the *confinement* at the designated penal institution. In fact, the sentence cannot be *executed* until the sentence is completed by the Attorney General designating the place of confinement. If prisoners serving D.C. sentences could bring habeas corpus to attack their *place of confinement* on the ground that the place of confinement was not part of the sentence, then practically every D.C. sentence would be subject to Federal habeas corpus and the restrictions of section 23–110(g) would be a nullity. Congress never intended its statute to be given such a narrow construction.

Notwithstanding the requirements of the D.C. statute, habeas corpus jurisprudence requires that a petitioner exhaust state

---

**2.** Section 23–110 provides:

§ 23–110. Remedies on motion attacking sentence.

(a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) *the sentence is otherwise subject to collateral attack,* may move the court to vacate, set aside, or correct the sentence.

\* \* \* \* \* \*

(g) *An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by* the Superior Court or by *any Federal* or State *court if it appears that the applicant has failed to make a motion for relief under this section* or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention. [Emphasis added] This statute extinguishes the traditional *habeas corpus* jurisdiction of Federal and State courts with respect to sentences imposed pursuant to D.C.Code § 24–

425. *Swain v. Pressley, supra, Bland v. Rodgers,* 332 F.Supp. 989, 991 (D.D.C.1971).

**3.** See n.2.

**4.** D.C.Code § 24–425 provides:

All prisoners convicted in the District of Columbia for any offense, including violations of municipal regulations and ordinances and acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, *to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served.* The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

(Emphasis added).

remedies before presenting his petition to the federal courts. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). The exhaustion requirement has been applied to habeas corpus petitions, which allege a state-based infirmity, presented by state prisoners confined in federal prisons. Considering a habeas petition which attacked the transfer of a state-convicted prisoner from a state prison in Maine to a federal penitentiary in Pennsylvania, the Third Circuit affirmed a lower court's dismissal. *Pratt v. Hagan,* 273 F.2d 956 (3d Cir.1960). The Circuit Court recognized that the petitioner's failure to exhaust state remedies required the dismissal. There is no indication here that Neal has exhausted the remedies available through the District of Columbia courts.

*Second,* Neal waited seven years and seven months until November 19, 1981 before presenting subject petition. In that interval the Department Order he now seeks to enforce (D.O. 4810.1–6) was amended on August 17, 1981 *to remove the requirement for a hearing before a transfer from Lorton to a federal penitentiary.*[5] A remand at this time would thus be useless. Since a hearing is no longer required, if Neal were returned to Lorton he could immediately be returned to Marion without a hearing. The remand of the case thus calls for the trial court to consider a futile request.

*Third,* Neal's petition also alleges that D.C. policy, as illustrated by Department Order No. 4810.5, provides as a matter of policy that the D.C. Department and the Federal Bureau of Prisons reciprocally transfer sentenced offenders "as expeditiously as possible when the needs of the offender may best be served by programs at another institution or facility." However, such claims are *not cognizable* by federal courts, even in mandamus. *Moore v. U.S. Attorney General,* 473 F.2d 1375 (5th Cir. 1973).

*Fourth,* the Department Order that was in effect in 1977 when Neal was removed to Atlanta also indicates that the Order does *not* apply to the *transfer* of a prisoner, sentenced in accordance with statute, "to the custody of the Attorney General of the United States or his authorized representative who shall designate the places of confinements where to sentences of all such persons shall be served." D.C.Code § 24–425.[6] Any transfer from the jail, lockup, or

---

5. The present Department Order does *not* require a hearing. As amended August 17, 1981 it provides:

    b. *Administrative Procedures.* Upon receipt of notification that a DCDC resident is to be transferred to a Bureau of Prison (BOP) institution it shall be the responsibility of the institution Administrator to ensure that the resident is afforded prior notification by staff member and witness and is advised of the reason(s) for the transfer. At the time of the notification the resident shall be afforded the opportunity to indicate any objections, and rationale for the same, regarding the transfer. A written record (Enclosure # 1, "Memorandum to the Record") of the transfer notification will be prepared and signed by the resident and each staff member. One copy of the memorandum will be placed in the resident's records jacket prior to transfer, one copy will be given to the resident and two copies forwarded to the Office of Case Management within 48 hours after the notification. Should the resident decline or waive notification, this too will be made a matter of record, signed by the resident and each staff member and placed in the resident's records jacket prior to transfer. Two copies of this record will be forwarded to the Office of Case Management not later than 48 hours after a resident has declined transfer notification.

6. D.C.Code § 24–425 provides:

    All prisoners convicted in the District of Columbia for any offense, including violations of municipal regulations and ordinances and acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, *to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served.* The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or un-

other local institution (here Lorton Reformatory) where a convicted defendant is being held awaiting the completion of the imposition of his sentence (which is accomplished by the Attorney General designating the place of confinement) is *not* a "transfer" of the type contemplated by Department Order 4810.1 as it existed in 1977.

A careful examination of Department Order 4810.1 reveals a necessary distinction between movement of prisoners occasioned by "designation" and that occasioned by "transfer." Such a distinction is mandated *to insure the smooth functioning of the prison system.* If the order is not read with such a distinction in mind, then every "designation" by the Attorney General, as required by statute to complete the sentence, which resulted in a prisoner being moved from local facilities would be subject to the hearing requirements of the Order.

The following aspects of Department Order 4810.1 reveal the intended distinction between a "designation" and a "transfer." The definition of "transfer" in section 4(b) of the Department Order provides:

> Transfer. To move a *sentenced offender* from a FBP [Federal Bureau of Prisons] institution or facility to a DCDC [D.C. Department of Corrections] institution or facility, or vice versa, upon mutual agreement of the Director, Federal Bureau of Prisons, and the Director, D.C. Department of Corrections. [Emphasis added]

The requirement for "mutual agreement" contained in the transfer section is not required for designations. There is *no* allegation that the "transfer" was upon "mutual agreement of the Director, Federal Bureau of Prisons, and the Director, D.C. Department of Corrections." In fact, Neal's removal from Lorton to Atlanta, Georgia was required by the statute to be pursuant to designation which requires no such mutual agreement.

If no distinction exists between movement pursuant to "designation" and one pursuant to "transfer," then sections 6(b), (c), and (d) of the Order would apply to both actions. Equating a designation and a transfer would require that a hearing be provided upon every designation by the Attorney General. Additionally, section (c) would require that only prisoners in the enumerated categories could be moved pursuant to designation. It could not be suggested that the Attorney General would be limited by such considerations in his designation of the location where sentence is to be served.

Transfers, for which the Department Order required a hearing, were to be made for *disciplinary, security,* or *protective purposes* and only prisoners in those specifically enumerated categories could be referred for transfer. Section 6(c) of the Department Order indicates that requiring a hearing is limited to:

(1) Those who are severe management problems.

(2) Those whose lives are in jeopardy or are protective custody cases because they have testified for the government, witnessed crimes in institutions or former law enforcement officers.

(3) Those with commitment papers which indicate that the sentencing judge has recommended commitment to a Federal institution.[7]

(4) Those who are potential escape risks.

(5) Those who present a threat to the life of themselves or others.

The Department Order thus indicates that the hearing requirement was intended to apply only to those prisoners who were *sen-*

---

healthful conditions in the institution where such prisoner is confined, or for other reasons.

The last sentence indicates that the D.C. Department of Corrections has no authority to impose conditions on the statutorily designated powers of the Attorney General. In fact an attempt by the sentencing judge to *designate* the place of confinement is surplusage since that part of the sentence is within the exclusive

power of the Attorney General and *not* within the power of the sentencing judge. *Bugg v. United States,* 140 F.2d 848, 851–52 (8th Cir.), *cert. denied,* 323 U.S. 673, 65 S.Ct. 89, 89 L.Ed. 547 (1944); *United States v. Huss,* 520 F.2d 598 (2d Cir.1975).

7. There is no allegation here that the "sentencing judge" recommended such commitment.

*tenced* to serve their sentences in Lorton by designation of the Attorney General and their service of the sentence there was found to create a problem within the five types specified in the Department Order, *supra*. There is no claim in this case that the facts here fit into any of those categories.

Consideration of section 6(d) requirements also reveals that transfers pursuant to designation by the Attorney General when he completes the sentence by designating the place of confinement, are not the type of transfers covered by the Department Order. This section requires that recommendations for transfer to which the Department Order applies must include a "current Progress Report including the residents adjustment and activities at [Lorton], conduct, outstanding detainers, all Parole Board actions and medical or psychological problems, if any." The character of these requirements indicate that the Department Order was *not* intended to apply to convicted defendants who were *temporarily* in Lorton merely awaiting designation of their place of confinement after conviction.

Finally, the Order is consistent in its language regarding *who* is responsible for a "designation" and a "transfer." A designation is made by the Attorney General or the Courts, as part of the sentence. [Section 4(a)] Whereas a transfer, with its hearing requirements, is initiated by the Administrator [Section 6(b), (c), and (d)], but is accomplished upon the final action of the Director, D.C. Department of Corrections after reviewing the required recommendation and evaluation reports. [Section 6(f)].

It must thus be concluded that, taken by its four corners, Department Order No. 4810.1 indicates that it was not intended to apply to prisoners who were only confined at Lorton less than a month after their sentence before they were transferred to a federal institution designated by the Attorney General. Thus, Neal's Petition does not indicate that he was entitled to a hearing even in 1977 before the Department Order was amended.

For all the foregoing reasons, and without extended discussion of other reasons, I would affirm the denial of the writ by the District Court. Hence my vote to *en banc* the case to maintain the consistency of our decisions.

*Appendix*

DEPARTMENT OF CORRECTIONS, D.C.

Office of the Director

DO 4810.1
April 30, 1976
CMS

*DEPARTMENT ORDER NUMBER 4810.1*

Subject: Federal Designation and Transfer of Sentenced Offenders

1. *Purpose.* To establish uniform procedures for the transfer of sentenced offenders between institutions and facilities of the Federal Bureau of Prisons (FBP) and the District of Columbia Department of Corrections (DCDC).

2. *Issuances Affected or Referenced.*

a. *Cancellation.* This Order supersedes Department Notice Number 4810.1, subject: "Designation and Removal of Sentenced Female Felons," dated February 4, 1974.

b. *Reference.* Department Order Number 4353.1, subject: "Reporting Prisoners Transferred to Federal Institutions," dated May 11, 1948.

3. *Authority.* 18 USC 4082, et al.

4. *Definitions.* For the purpose of this Order, the following definitions apply:

a. *Designation.* The initial assignment of a convicted U.S. or D.C.Code violator, by the Attorney General or the Courts, to an agency for service of sentence.

b. *Transfer.* To move a sentenced offender from a FBP institution or facility to a DCDC institution or facility, or vice versa, upon mutual agreement of the Director, Federal Bureau of Prisons, and the Director, D.C. Department of Corrections.

5. *Policy.* It is the policy of the Department to transfer DCDC sentenced offenders to FBP and to accept FBP sentenced offenders as expeditiously as possible when

the needs of the offender may be best served by programs at another institution or facility.

6. *Procedures.*

a. *Movement to a Federal Bureau of Prisons Institution or Facility.* All DCDC residents who have been designated to serve their sentences in a FBP institution or facility will be escorted to that facility by a U.S. Marshal. Normally, the U.S. Marshal's office will notify Detention Services 48 hours in advance of the time and date of such movement. Upon receipt of such notification, Detention Services will in-turn notify the institution where the resident is housed, of the time and date of movement. The Administrator of that institution shall ensure that the resident is transported to the D.C. Detention Facility where he will be picked up by a U.S. Marshal. Female residents will be picked up by U.S. Marshals at the Women's Detention Center.

b. *Transfer to a Federal Bureau of Prisons Institution or Facility.* Upon receipt of notification that a DCDC resident is to be transferred to a FBP institution or facility it shall be the responsibility of the institution (facility) Administrator to ensure that the resident is afforded a hearing before a committee consisting of at least three institutional (facility) staff members and advised of the reason(s) for transfer. During the hearing the resident shall be afforded an opportunity to indicate any objections, and rationale for the same, regarding the transfer. Recorded minutes of the proceedings will be signed by the resident, members of the committee and filed in the resident's records jacket prior to transfer. Should a resident decline such a hearing, this too will be made a matter of record, signed by the resident, committee members and filed in the resident's records jacket prior to transfer.

c. *Referrals for Transfer.* Sentenced D.C.Code offenders in the following categories may be referred by the Administrator, for transfer to FBP institution or facility:

(1) Those who are severe management problems.

(2) Those whose lives are in jeopardy or are protective custody cases because they have testified for the government, witnessed crimes in institutions or former law enforcement officers.

(3) Those with commitment papers which indicate that the sentencing Judge has recommended commitment to a Federal institution.

(4) Those who are potential escape risks.

(5) Those who present a threat to the life of themselves or others.

d. *Recommendations for Transfer.* Administrators may submit recommendations for transfer of residents in categories listed in paragraph 6c above for referral to the Director of the Bureau of Prisons. All recommendations will be submitted to the Chief, Executive Services and must include sufficient justification and have the following supporting documents attached:

(1) A current Progress Report including the residents adjustment and activities at the institutions, conduct, outstanding detainers, all Parole Board actions and medical or psychological problems, if any.

(2) A copy of the Pre-sentence Report, when available.

e. *Acceptance of Offenders from Federal Bureau of Prisons Institutions.* The Department may accept from the Federal Bureau of Prisons sentenced U.S. and D.C. Code violators in the following categories.

(1) Adult male U.S.Code violators who are within 18 months of expiration of sentence, parole eligibility or mandatory release date.

(2) Adult male D.C.Code violators, based upon their adjustment in the Federal institution.

(3) Adult female U.S. and D.C.Code violators who are within nine months of expiration of sentence, parole eligibility or mandatory release date, and only when the District of Columbia Board of Parole has agreed to accept jurisdiction.

(4) Individuals with psychological problems caused by distant separation from family and community ties.

(5) Male Federal Youth Corrections Act (FYCA) offenders may be accepted on a space available basis.

(6) Only those Narcotic Addict Rehabilitation Act (NARA) offenders who have been declared, "cured," by competent medical authority, may be accepted, as the Department does not have the capability to treat active cases.

(7) An offender who has an immediate family member with terminal illness which has been medically certified by competent medical authority.

f. *Processing Procedures.* The DCDC Case Management Specialist shall review all case materials, make a recommendation, obtain recommendations from the Chairman of the D.C. Board of Parole; Assistant Director for Women's Programs; Superintendent Correctional Services and Superintendent, Community Services, as appropriate. All materials will then be forwarded to the Chief, Executive Services for review and recommendation to the Director for final action.

7. *Effective Date.* This Order is effective upon receipt.

/s/ Delbert C. Jackson
DELBERT C. JACKSON
Director

Distribution: "A" & "C"
D.C. Council Safety Committee