BROWN, Circuit Judge,
concurring in the judgment:
I agree it was error for the district court to dismiss Williams’s habeas petition for lack of jurisdiction pursuant to D.C.Code § 23-110(g). However, the court interprets section 23-110 so literally it confers routine jurisdiction in federal court for all claims of ineffective assistance of appellate counsel by prisoners under D.C. sentence. Since I believe this result departs from congressional intent, I would read the statutory scheme broadly to maintain federal jurisdiction solely as a safety valve. Therefore, I concur only in the judgment.
I.
History matters here. Our current dilemma arises out of a succession of procedural anomalies that can only be described as “A Series of Unfortunate Events.” First, when section 23-110 was enacted in 1970, the constitutional claim of appellate ineffective assistance of counsel (IAC) did not exist. The Supreme Court did not recognize a Sixth Amendment right to effective assistance of counsel on direct appeal of a criminal conviction until Evitts v. Lucey, 469 U.S. 387, 395, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Several years before Lucey, however, the District of Columbia Court of Appeals (DCCA) considered an appellate IAC claim in Streater v. United States, 429 A.2d 173 (D.C.1980) (Streater I). In Streater I, the DCCA held Streater, a D.C. prisoner, could not raise the claim in a section 23-110 motion. The DCCA determined the claim was “not within the purview of § 23-110” because, among other reasons, Streater “has not argued that his sentence was imposed in violation of the Constitution of the United States.” Id. at 174. At the time, prior to Lucey, this was a correct statement of the scope of section 23-110. Relying on two federal circuit decisions interpreting the federal habeas statute, 28 U.S.C. § 2255, the DCCA also noted section 23-110 “provides no basis upon which the trial court may review appellate proceedings.” Id.
In Streater v. Jackson, 691 F.2d 1026 (D.C.Cir.1982) (Streater II), we reviewed the district court’s dismissal of Streater’s habeas petition. Streater argued he was given the “run around” by the D.C. courts. Id. at 1028. We observed the DCCA had not “enlightened Streater as to the remedy, if any, still open to him in the local courts.” Id. Reluctant to meddle with the *1003 DCCA’s jurisdiction, we ordered the district court to hold Streater’s petition in abeyance and invited the DCCA to consider his motion to recall the mandate. Id. It did. See Streater v. United States, 478 A.2d 1055 (D.C.1984).
Fast forward to Watson v. United States, 536 A.2d 1056 (D.C.1987) (en banc), in which the DCCA again faced an appellate IAC claim, but this time post-Lucey. The DCCA revisited the procedural question of “how one may challenge previous counsel’s effectiveness on appeal.” Id. at 1059. Turning to Streater I, the DCCA again rejected section 23-110 as a procedure for raising this claim because “the Superior Court should not have authority to rule on the constitutionality of an appellate proceeding.” Id. at 1060 (citing Streater I, 429 A.2d at 174). The court also refused to allow the claim to be brought under the District’s general habeas statute, D.C.Code § 16-1901, for the same reason. Id. (citing Streater II, 691 F.2d at 1028). Having dismissed these statutory habeas remedies, the court identified an appropriate procedural vehicle for the claim: “A motion in this court to recall the mandate is the appropriate avenue to take in presenting a Lucey challenge.” Id. (citing United States v. Winterhalder, 724 F.2d 109, 111 (10th Cir.1983)). In reaching this conclusion, the DCCA observed that in Streater II we had approved its decision to remove the claims from section 23-110 in Streater I. Id. at 1060-61.
II.
With this history in mind, I turn to the statutory provision at issue, section 23-110(g), which provides:
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
D.C.Code § 23-110(g). The court interprets this provision to mean the federal courts have jurisdiction to entertain a D.C. prisoner’s habeas petition whenever the prisoner is not “authorized to apply for relief by motion pursuant to this section.” See Op. at 1004-1005. Because in Streater I the DCCA held appellate IAC claims cannot be presented in a section 23-110 motion, the court correctly observes a prisoner with such a claim is not “authorized” to file a section 23-110 motion; thus, the court reasons, section 23-110 is “by definition, inadequate” to address those claims. Op. at 1004-1005. While it is true the statute’s plain words may be read to justify the court’s holding, the result is clearly at odds with the statute’s purpose.
Enacted by Congress in 1970, section 23-110 was only one provision of a sweeping legislative reform designed to remove “local litigation” from the federal courts to the District of Columbia’s judicial system. Swain v. Pressley, 430 U.S. 372, 375, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). As the Supreme Court noted in Swain, section 23-110 created for prisoners under D.C. sentence a collateral procedure in the Superior Court “comparable” to the habeas statute for federal prisoners, section 2255. Id. Section 23-110, like section 2255, was “intended to substitute a different forum [the Superior Court] and a different procedure [section 23-110] for collateral review” of D.C. prisoners’ sentences. Id. at 378, 97 S.Ct. 1224. The statute’s clear purpose was to shift initial habeas jurisdiction for D.C. prisoners from the federal courts to the District of Columbia courts. See Byrd v. Henderson, 119 F.3d 34, 36-37 (D.C.Cir.1997).
*1004 This court now says the DCCA’s interpretation of section 23-110 requires federal courts to assume jurisdiction over appellate IAC claims. The court in effect says, “The DCCA made us do it.” Congress enacted section 23-110 with the broad purpose of accomplishing the opposite result, and the DCCA, with our encouragement, exercised its best judgment in fashioning a procedural remedy for a heretofore unrecognized constitutional claim. The DCCA therefore could respond, “The D.C. Circuit made us do it.”
III.
The answer lies in section 23-110(g)’s “inadequate and ineffective” clause — what we have called the “safety valve.” Blair-Bey v. Quick, 151 F.3d 1036, 1042 (D.C.Cir.1998). In Swain, the Supreme Court upheld section 23-110 against a Suspension Clause challenge, relying heavily on the last clause of section 23 — 110(g): “That clause allows the District Court to entertain a habeas corpus application if it ‘appears that the remedy by motion is inadequate or ineffective to test the legality of [the applicant’s] detention.’ ” 430 U.S. at 381, 97 S.Ct. 1224. Congress decided to replicate a “state” judicial system in the District of Columbia, with no interference from the federal courts unless the state habeas remedy is deficient. Logically, then, section 23-110(g) should be read purposively to require federal courts to determine if the remedy, including a substitute procedural mechanism like the motion to recall the mandate, is “adequate and effective to test the legality” of the prisoner’s detention.
The DCCA’s motion to recall the mandate procedure is cumbersome, requiring the movant to meet a high initial burden. See Watson, 536 A.2d at 1060. It is thus unclear whether the recall-mandate procedure is an entirely adequate and effective remedy. But we do not have to answer that question in Williams’s case because the DCCA summarily denied his motion to recall the mandate, his motion for an explanation, and his petition for rehearing. The DCCA’s failure to explain why it denied Williams’s motion leaves us with no basis to determine whether it actually considered his claim on the merits or rejected the claim solely because Williams had failed to satisfy the initial burden for such motions. We therefore cannot find the remedy afforded Williams is adequate and effective, and section 23-110(g)’s safety valve operates to allow the federal district court jurisdiction to entertain his habeas petition.
IV.
With all this in mind, I see no reason for the court to revisit the Streater question and reinterpret section 23-110(g). The court today does a bait-and-switch: it rejects the mandate-recall procedure and informs the DCCA the federal courts have jurisdiction to hear Williams’s claim and others like it unless the DCCA overrules its precedent and allows those claims to be heard by the Superior Court under section 23-110.
It is true the procedural diktat the court imposes on the DCCA today is identical to the procedure we have adopted for ourselves. We “ordinarily” require federal prisoners to raise appellate IAC claims collaterally pursuant to section 2255. United States v. Henry, 472 F.3d 910, 914 (D.C.Cir.2007). But to give credit where credit is due, at the time the DCCA adopted the motion to recall the mandate procedure — only a year after Lucey — its decision was eminently reasonable. Once the Supreme Court had authorized a new constitutional claim to challenge events happening after the trial court proceedings, it was logical to require the claim to be initiated in the court before which the alleged defect occurred.
*1005 Moreover, when facing this same question, other federal and state appellate courts have made the exact same choice. See State v. Knight, 168 Wis.2d 509, 484 N.W.2d 540, 543 n. 5 (1992) (noting Third, Ninth, and Tenth Circuits, Missouri, and the District of Columbia employed motion to recall the mandate procedure); see also United States v. West, 240 F.3d 456, 460 n. 3 (5th Cir.2001) (surveying approaches of federal and state courts). Still other courts have answered the question differently than either the DCCA or our circuit. For instance, the Wisconsin Supreme Court, confronting a statutory provision nearly identical to section 23-110, determined the statutory provision was “ ‘inadequate or ineffective’ ” to address appellate IAC claims. Knight, 484 N.W.2d at 544. After considering the approaches taken by other appellate courts, the Wisconsin Supreme Court held the claim should be presented directly to the state appellate court in an original writ of habeas corpus. Id. at 544-45; see also West, 240 F.3d at 460 n. 3 (observing Second Circuit recalls its own mandate from dismissal of direct appeal after district court has denied section 2255 relief). We cannot fault the DCCA for doing exactly what other courts have done when facing this thorny procedural question.
Because the court has determined, as a matter of law, that section 23-110 is inadequate and ineffective to raise appellate IAC claims, a D.C. prisoner may now file a habeas petition asserting this claim in the federal district court, and the court will be obligated to review the claim on the merits. In light of the exhaustion requirement of 28 U.S.C. § 2254(c), the prisoner will first have to file a motion to recall the mandate with the DCCA. But even if the DCCA recalls the mandate, remands the record to the Superior Court for a factual hearing, and then denies the prisoner’s claim in a decision on the merits — clearly an adequate and effective remedy — the prisoner still gets a second (or more accurately third) bite at the apple in federal court. Some of these claims will be summarily resolved pursuant to AEDPA’s deferential standards, and it is unclear what the added burden on our courts will be. For instance, Williams’s appellate IAC claim appears to be little more than a string of tenuous arguments nested like Russian dolls. A better use of our judicial resources would be to assert jurisdiction only where the safety valve is truly implicated.
At this late hour, rather than leaving the DCCA with a Hobson’s choice, I would allow it to address the matter in the first instance, as we did in Streater II. There we noted, “it is apparent that the D.C. Court of Appeals is the tribunal best situated to address Streater’s claim that he was denied effective assistance of counsel in that forum.” 691 F.2d at 1028. Principles of federalism and comity also gave us pause back then: “Mindful that relations between the District of Columbia and federal systems should not be ‘disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,’ we believe the D.C. Court of Appeals should be invited to consider and rule on the merits of Streater’s claim for post-conviction relief.” Id. (quoting Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)). These concerns are heightened when, as is the case here, we interpret a provision of the D.C. Code that is “an Act of Congress applicable exclusively to the District of Columbia” because “[w]e do not treat such local statutes as if they were part of the United States Code,” and “[o]ur policy has been to defer to the District of Columbia Court of Appeals on questions of statutory interpretation.” United States v. Edmond, 924 F.2d 261, 264 (D.C.Cir.1991). If, as in Streater II, we remanded Williams’s habeas petition to the federal *1006 district court and ordered it held in abeyance, we would allow the DCCA the opportunity either to recall its mandate and address Williams’s claim on the merits or to revisit the underlying question that has caused this court and others so many procedural headaches.