United States Court of Appeals,

Fifth Circuit.

No. 93-1427.

In the Matter of SOUTHLAND CORP., Debtor.

SOUTHLAND CORP., Appellee-Cross-Appellant,

v.

KILGORE & KILGORE, Appellant-Cross-Appellee.

May 4, 1994.

Appeals from the United States District Court for the Northern District of Texas.

Before JONES and DeMOSS, Circuit Judges and COBB[*], District Judge.

EDITH H. JONES, Circuit Judge:

Kilgore & Kilgore represented some of Southland's bondholders in a Texas state court action for breach of contract. Southland subsequently filed a voluntary Chapter 11 petition and removed the state court action to the bankruptcy court. The plaintiffs in the state court action thereafter assigned their right to recover attorneys' fees under Texas law to Kilgore & Kilgore, and the firm filed a claim for $28,369.00 in pre-petition legal fees in the Southland bankruptcy.

After confirmation of the Chapter 11 plan, Southland objected to the claim in its Amended Objection of August 2, 1991. The bankruptcy court allowed the claim, but the district court reversed on the basis that the firm was not entitled to recover attorneys' fees under Texas law. Finding error in the district court's interpretation of Texas law, we REVERSE and REMAND for the entry of judgment based on the bankruptcy court's decision.

I.

As a first level of attack, Kilgore & Kilgore argues that Southland never properly objected to their claim for attorneys' fees on the *particular* basis that Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (West 1986) did not provide for such recovery. Specifically, the law firm appellant maintains that in its Amended Objection Southland objected on only two grounds: lack of standing and

[*]District Judge of the Eastern District of Texas, sitting by designation.

discharge under the Chapter 11 Plan. Further, the firm maintains that any objection properly made by Southland on this basis was set aside by the bankruptcy court at its November 2, 1992 hearing and never made again. The district court, however, concluded that Southland did object on this particular basis in its letter brief to the bankruptcy court and in hearings conducted on the claim. We agree.

Southland objected on the basis of § 38.001 at least three times before the bankruptcy court. At a hearing before the court on the Amended Objection held on July 22, 1992, counsel for Southland argued at length that the claims should be disallowed on the basis that they are not "valid claims" within the meaning of § 38.001. In a letter brief submitted per the bankruptcy court's request, counsel for Southland again made it perfectly clear that his client objected to the claims in part on the basis that § 38.001 would not provide for attorneys' fees where judgment had not been secured. Finally, at the second hearing on the Amended Objection held on November 2, 1992, counsel once again reminded the court of Southland's objection that the claim was invalid under Texas law.

Furthermore, the appellant's argument that the bankruptcy court deleted all prior objections by Southland when he called for a new record at the November 2, 1992 hearing is meritless. The judge opened up the hearing by saying that its purpose was the *reargument* of issues presented at the July 22, 1992 hearing, and counsel for Southland *repeated* the particular objection at the November 2 hearing. Significantly, the bankruptcy court in its order denying Southland's objections to the claim specifically addressed the validity of the claim under § 38.001, clearly suggesting that the objection had not been "deleted."

Our conclusion that Southland properly objected is reinforced by the fact that Rule 3007, which governs objections to claims, provides little guidance as to the form the objection must take other than specifying that it be in writing and filed with the court. *See* Bankr.R. 3007. The writing requirement is certainly satisfied here on the basis of the Amended Objection filed with the court on August 2, 1991 and the letter brief submitted by counsel for Southland on July 29, 1991.[1] In sum,

---

[1] As to the argument that the Amended Objection listed only two grounds for objection, neither of which dealt with § 38.001 specifically, "[t]he purpose of filing an objection is to join issue in a contested matter, thereby placing the parties on notice that litigation is required to resolve an actual dispute between the parties," *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985), and the Amended Objection certainly satisfied this purpose even if it failed to spell out every theory of

the appellant's contention that Southland failed to properly object is without merit.

## II.

Under Texas law, "[a] person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a *valid* claim and costs, if the claim is for: ... (8) an oral or written contract." Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (West 1986) (emphasis added). The district court interpreted this provision to require the party seeking attorneys' fees to have obtained a *judgment* on the claim, and rejected the bankruptcy court's view that the requirements of the Texas provision were satisfied since the parties—the client-assignors of Kilgore & Kilgore—would have prevailed in state court but for Southland's voluntary petition in bankruptcy. Upon de novo review of this question of Texas law, we conclude that the district court's view is wrong, and, furthermore, that the requirements of § 38.001 are met in this case.

The statutory language nowhere requires a judgment but only a "valid claim." Particularly compelling is the fact that the requirement that the party obtain a judgment was specifically removed from the statute in the late 1970's. *See Corpus Christi Dev. Corp. v. Carlton,* 644 S.W.2d 521, 523 (Tex.App.—Corpus Christi 1982, no writ). The legislature may have removed the judgment requirement from the statute at least in part to avoid the inequity of cases where a debtor pays the plaintiff's claim in full the night before judgment is rendered. *See, e.g., Villarreal v. Wennermark*, 540 S.W.2d 528, 540 (Tex.App.—San Antonio 1976, no writ) (concluding that statute requires a judgment even where the debtor makes full payment after the suit is filed but before trial commences). Whatever the reason for the legislature's elimination of the judgment requirement in § 38.001, however, the cases relied upon by Southland for the proposition that a judgment is still required—notwithstanding the telling change in statutory language—are inapposite since they apply only where a party proceeds to trial.

In *Huddleston v. Pace,* 790 S.W.2d 47 (Tex.App.—San Antonio 1990, writ denied), the plaintiff tenant won a jury verdict on its negligence and constructive eviction claims, but lost on its

---

objection. Further, the letter brief certainly spelled out all the various theories of objection, and its designation as a letter brief does not mean it fails to satisfy the notice requirement of Rule 3007. *See id.* at 552 & n. 6.

breach of lease claim, the latter being the only claim entitling the plaintiff to recovery of attorneys' fees under § 38.001. *See id.* at 51. While the court in *Huddleston* does suggest that a judgment is required for a claim to be valid under § 38.001, *see id.,* the court was clearly speaking in the context of suits that proceed to trial. That is, *Huddleston* stands for no more than the proposition that a "valid claim" does not exist if a party proceeds to trial and loses on that claim.

Further support for this reading of *Huddlestone* is found in that court's citation of *Corpus Christi Dev. Corp. v. Carlton,* 644 S.W.2d 521 (Tex.App.—Corpus Christi 1982, no writ) as authority for the proposition that a valid claim requires a judgment. *See id.* Significantly, the court in *Corpus Christi Dev. Corp.* specifically identified the context in which this requirement applied: "[I]n the context of a suit *that goes to trial,* a judgment is a condition precedent to recovery of attorneys' fees because a "valid claim' is not established until the plaintiff gets a judgment that is supported by the pleadings and the proof." *Corpus Christi Dev. Corp.,* 644 S.W.2d at 523 (emphasis added). In short, *Huddlestone* can properly be understood only in light of the limited holding in *Corpus Christi Dev. Corp.*

The rule derived from these two cases is of course perfectly consistent with amended § 38.001 and the view of legislative intent suggested above. Properly understood, a valid claim requires a final judgment where the case proceeds to trial, but does not require one where the case—as here—does not progress that far, and the underlying claim is uncontested. Attempting to bolster its view of § 38.001, Southland cites another state case, *High Plains Wire Line v. Hysell Wire Line,* 802 S.W.2d 406, 410 (Tex.App.—Amarillo 1991, writ ref'd n.r.e.), and two bankruptcy court opinions, *In re Lorenzo Bancshares, Inc.,* 122 B.R. 270, 272 (Bankr.N.D.Tex.1991), and *In re Continental Airlines Corp.,* 110 B.R. 276, 281 (Bankr.S.D.Tex.1989), but all three sources involved disputes that proceeded to trial for determination. These authorities simply bear no direct relevance to the question of establishing a valid claim where the case does not proceed to trial.[2]

---

[2]Similarly inapposite is *Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 806 (Tex.App.—Dallas 1988, no writ), in which the court held that the plaintiff was not entitled to attorneys' fees where, although successful on the claim at trial, she had been paid in full before trial. The plaintiff made a number of claims against her insurance company but the only damages awarded were for past medical expenses which the carrier had paid as incurred. *See id.* at 804.

Although the district court misinterpreted § 38.001, the next level of inquiry necessarily focuses on the bankruptcy court's view that the requirements of the Texas provision are satisfied because the bondholders—the client-assignors of Kilgore & Kilgore—would have prevailed in state court but for the bankruptcy petition. The view that the parties would have prevailed but for the reorganization rests on the fact that the bondholders' claims were paid pursuant to Southland's reorganization plan. While obviously not the technical equivalent of a state court judgment, the recognition of claims pursuant to a Chapter 11 plan is analogous for purposes of § 38.001. *Cf. Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1054 (5th Cir.1987) (concluding that a confirmation order is a final judgment for res judicata purposes). After all, the plan discharged Southland's liability to the bondholders—among many other claims—in an order that was final and appealable. In short, the district court's analysis is inconsistent with the amended language of § 38.001 and the subsequent case law, and the appellants have a "valid claim" under § 38.001.

### III.

The conclusions reached above require us to address the merits of Southland's cross-appeal, which complains that the bankruptcy court erred in treating the Kilgore & Kilgore claim as a general unsecured claim under the plan of reorganization. Southland maintains that the law firm's claim is merely derivative of the original bondholders' claims; as such, the claim for attorneys' fees was satisfied and discharged by the specific treatment provided for the underlying bondholders' claims under the plan. Southland argues that Kilgore & Kilgore cannot complain now since the plan—which did not provide additional distribution amounts to the bondholders on account of attorneys' fees—was filed *before* the assignment to the firm, and no objection was made at that time. In essence, Southland contends that because its plan did not provide for the type of claim filed by Kilgore & Kilgore, and because Kilgore & Kilgore failed to realize the "true nature" of its claim, Kilgore & Kilgore may recover *nothing* from the confirmed plan. This contention makes up in brazenness what it lacks in equity. We reject it.

---

The court refused to find such a claim "valid" for purposes of attorneys' fees. The facts of the case before this court clearly are not analogous, since the bondholders had to sue Southland initially in state court.

First, by virtue of the assignment, Kilgore and Kilgore had a claim separate from the underlying bondholders' claims. Under Texas law, all or part of a plaintiff's cause of action may be assigned—including rights to the recovery of attorneys' fees. *See Adams v. Petrade Int'l., Inc.,* 754 S.W.2d 696, 721-22 (Tex.App.—Houston [1st Dist.] 1988, no writ). Thus, when the post-petition, but pre-confirmation assignment was made to Kilgore & Kilgore, the firm received a claim recognized as *distinct* under state law. Although "derivative" in the sense that the validity of the claim depended on the discharge of the underlying bondholders' claims, *see* part II *supra,* the claim for attorneys' fees is distinct from the underlying claims on the bonds themselves.

To say this is not, however, to suggest that Kilgore & Kilgore automatically had the right to file a claim that would be classified among the plan's general unsecured claims rather than among the claims of the bondholders from which it derived. The treatment of Kilgore & Kilgore's claim must be determined by the language of the plan itself.[3] Plainly, as Southland states, the plan excludes bondholders' attorneys' fees from the claims covered and discharged under the bondholders' class.[4]

---

[3] For example, if Kilgore & Kilgore had taken an assignment of bonds rather than the claim for attorneys' fees, its claim would have to fall within the bondholders' class.

[4] The Plan provided these bondholders with the following specific treatment for the Class 6 and Class 8 claims set forth in the Plan as confirmed:

> 3.06 **Class 6—Old Senior Subordinated Notes.** Class 6 consists of all claims of holders of Old Senior Subordinated Notes.

> 3.08 **Class 8—Old Subordinated Debentures.** Class 8 consists of all claims of holders of Old Subordinated Debentures.

> 5.03 **Old Senior Subordinated Notes.** Each holder of an Allowed Claim in Class 7 will receive *for each $1,000 principal amount of such Claim and all accrued and unpaid interest thereon,* subject to the provisions of Section 6.10 hereof, $650 principal amount of New First Priority Debentures, 7.5 New Warrants and 40.5 shares of Common Stock on or before the date which is ten Business Days after the later of (a) the Effective Date, and (b) the date such Claim becomes an Allowed Claim. Any holder who would otherwise be entitled to receive a fractional share will instead receive a whole share.

> 5.05 **Old Subordinated Debentures.** Each holder of an Allowed Claim in Class 6 will receive *for each $1,000 face amount of such Claim and all accrued and unpaid interest thereon,* subject to the provisions of section 6.01 hereof, either (i) $500 principal amount of New Second Priority Series A Debentures, 6 New Warrants and 28 shares of Common Stock or (ii) if the holder of such Allowed Claim makes a timely election after confirmation of the Plan, $250 principal

Plainly, the Plan also contains a catch-all Class 4B, which included "all unsecured Claims of Creditors (as such term is defined in Section 101(9) of the Bankruptcy Code) against the company ..." The terms of Kilgore & Kilgore's assignment and the nature of its unsecured debt permit it to fall within Class 4B, as the bankruptcy court held.

What Southland really quarrels with is therefore not the procedure utilized by Kilgore & Kilgore so much as the wording of Southland's own plan. The plan effects a perhaps anomalous treatment of this assigned claim, but we emphasize that that consequence follows only because of the particular way in which the plan defined and limited the bondholders' rights.[5] Because Kilgore & Kilgore, upon reading the plan, could easily fit its claim within the unsecured Class 4B, while just as easily determining that its claim was specifically excluded from treatment with the bondholder class, it did not have reason to object to the Plan. Southland thus cannot argue that Kilgore & Kilgore had a duty to object to its facially favorable classification under the Southland plan.[6]

## IV.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for entry of judgment based on the bankruptcy court's decision.

---

amount of New Second Priority Series C Debentures and 28 shares of Common Stock, in each case on or before the date which is ten Business Days after the later of (a) the Effective Date, and (b) the date such Claim becomes an Allowed Claim. Any holder who would otherwise be entitled to receive a fractional share will instead receive a whole share.

From this language, it is evident that no class 6 or 8 claimant could be paid except upon proof of the amount of bonds he held. Further, no claims were provided for other than claims based on the principal amount of the bonds.

[5]Southland could have avoided treating Kilgore & Kilgore as a general unsecured claimant if its plan had redefined the treatment of the bondholders' claims, *e.g.,* by creating a sub-class based on bondholders' attorneys' fee claims, or by calculating each bondholder's rights with reference to each *$1,000 of allowed claim* in addition to or instead of each $1,000 principal amount of such claim. *See* note 4 *supra.*

[6]Southland presents two additional, little developed arguments on cross-appeal which merit little attention. The first of these is that the assignment—the propriety of which Southland does not dispute—did not give the firm/claimant any right to recovery greater than the original security holders. This proposition is unassailable, but certainly inapposite since the original security holders—as a matter of Texas law—would have been entitled to attorneys' fees. The second complains of the burden of proof allocation by the bankruptcy court, but our review of the bankruptcy court's order allowing the claim reflects an appropriate application of burdens.

. . . . .