FILED
United States Court of Appeals
Tenth Circuit

October 17, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JULIUS MUSAU,

      Petitioner - Appellant,

v.

KENNETH CARLSON, District
Director, Immigration and Customs
Enforcement in Kansas City; ERIC H.
HOLDER, JR., Attorney General of
the United States, in his official
capacity; JANET NAPOLITANO,
U.S. Department of Homeland
Security, in her official capacity as
Secretary; UNITED STATES
ATTORNEY,

      Respondents - Appellees.

No. 11-3105
(D.C. No. 2:10-CV-02427-KHV-KMH)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Julius Musau, an alien subject to a final order of removal, appeals from the

district court's dismissal of his 28 U.S.C. § 2241 petition for a writ of habeas

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

corpus. The district court dismissed for lack of subject matter jurisdiction, finding that Mr. Musau was challenging a final order of removal and that the REAL ID Act, 8 U.S.C. § 1252(a)(5), took away district court jurisdiction to hear such challenges. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253(a), and we reverse and remand for further proceedings.

Factual Background

Mr. Musau came to the United States from Kenya in 1991 to attend college in Kansas. Aplt. App. 18. In 2007, long after his student visa had expired, Mr. Musau was arrested in connection with a federal investigation of tax fraud. Id. at 19. He gave federal agents information and evidence relating to his roommates and acquaintances, and was released; but he received a notice to appear before an immigration judge based on his illegal presence in the United States. Id.

Meanwhile, during the pendency of Mr. Musau's immigration proceedings, Mr. Musau's brother—still in Kenya—allegedly received phone calls threatening Mr. Musau. The motivation for the threats presumably was Mr. Musau's role as a witness against his former roommates and acquaintances. Mr. Musau's brother received the first of these calls on March 12, 2010, prior to Mr. Musau's immigration hearing and ultimate grant of voluntary departure on March 18, 2010. Id. at 20. The record does not indicate when Mr. Musau (as opposed to his brother) actually became aware of the threatening calls; he did not mention the

calls to the immigration judge ("IJ") at the March 18 hearing. The calls continued through July. Id.

Mr. Musau did not move to reopen immigration proceedings based on these threatening calls. Instead, he filed a § 2241 petition and an emergency motion for stay of removal on August 3, 2010. In his petition, Mr. Musau claimed, among other things, that his deportation would violate the Convention Against Transnational Organized Crime ("CATOC"). Id. at 20-21. He acknowledged in his petition that he had not exhausted administrative remedies relating to his CATOC claim, but alleged that neither an IJ nor the Board of Immigration Appeals ("BIA") had any authority to grant him relief. Id. at 20.

The government filed a motion to dismiss, alleging that the district court lacked jurisdiction to hear Mr. Musau's petition.[1] The district court concluded that: (1) 8 U.S.C. § 1252(a)(5) and (b)(9) apply to habeas petitions alleging violations of treaty-based rights, (2) circuit court review is an appropriate and sufficient substitute for the writ of habeas corpus concerning challenges to orders of removal, and (3) Mr. Musau had not shown that no forum existed for his CATOC claims, which should have been raised before an immigration tribunal through, for example, a motion to reopen. Musau v. Carlson, No. 10-2427-KHV,

---

[1] The government also argued that Mr. Musau was not "in custody." Aplt. App. 16 n.11. The district court did not reach this argument, and the government renews it on appeal. The government is wrong. See, e.g., Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001).

at 8-12 (D. Kan. Mar. 24, 2011) (unpublished); Aplt. App. 12-16. With respect to the last finding, the district court explained that Mr. Musau had not shown (a) that immigration tribunals had no authority to entertain his CATOC claim or (b) that review by a federal court of appeals was insufficient. Aplt. App. 13-16. Based on those conclusions, the district court dismissed Mr. Musau's petition for lack of subject matter jurisdiction under 8 U.S.C. § 1252(a)(5) and Federal Rule of Civil Procedure 12(b)(1). Musau, slip op. at 2, 12; Aplt. App. 6, 16.

On appeal, Mr. Musau argues that the district court erred in concluding that it lacked subject matter jurisdiction over his petition.[2] The government maintains that the district court lacked jurisdiction. Aplee. Br. 19-20.

## Discussion

We review a district court's dismissal under Rule 12(b)(1) de novo. Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1242 (10th Cir. 2011).

On appeal, Mr. Musau reiterates that he has no means, other than his petition for a writ of habeas corpus, by which to enforce his rights under the CATOC. He appears to be correct, at least at present, insofar as immigration

---

[2] Mr. Musau also requested that this court strike the government's response brief and impose against the government sanctions, attorney's fees, or both, based on continued assertion of erroneous facts throughout the case. The government moved to file a corrected brief; Mr. Musau opposed the motion. The court understands the facts. The motion to strike, for sanctions, and for attorney's fees and costs is denied. The government's motion to file a corrected brief is granted.

tribunals are concerned. IJs and the BIA have no authority to grant any relief to an alien unless and until the Attorney General promulgates regulations granting them such authority. See, e.g., In re H-M-V-, 22 I. & N. Dec. 256, 258 (B.I.A. 1998) ("Initially, we note that the jurisdiction of this Board, and of the Immigration Judge, is limited by statute and regulation to that which has been delegated by the Attorney General."). The government has not identified any statute or regulation authorizing an IJ or the BIA to recognize or enforce rights under the CATOC, and we are not aware of any.[3] For the same reasons, we reject the government's arguments that Mr. Musau failed to exhaust available remedies before immigration tribunals; there apparently was nothing to exhaust. If the CATOC creates any rights to which Mr. Musau is entitled, wholly discretionary relief from the Attorney General or his delegates would be insufficient; "mercy" does not protect rights.

We also question the district court's interpretation of Rranci v. Attorney General, 540 F.3d 165 (3d Cir. 2008). The district court seemingly read Rranci as suggesting that immigration tribunals have some authority to consider and resolve CATOC claims. Aplt. App. 15 ("In Rranci, the Third Circuit contemplated that immigration courts have authority to consider a claim under CATOC."). But the Third Circuit merely recognized that the CATOC "calls into question whether the

---

[3] During repeated questioning on this point, counsel for the government eventually conceded that he was "not exactly sure" whether an IJ or the BIA has such authority. Oral Argument, 14:12 to 17:25.

Government may put [an informant] in harm's way . . . after using his cooperation" in a criminal proceeding, and ultimately remanded to the BIA to let the BIA, itself, declare whether it had authority to consider CATOC claims. Rranci, 540 F.3d at 178-79. According to counsel for Mr. Musau, the BIA has not resolved Mr. Rranci's case in the nearly four years since it was remanded. Oral Argument, 6:30 to 6:52. Regardless, the absence of a statute or regulation granting an IJ or the BIA authority to consider such claims would, by the BIA's own precedent, appear determinative. See H-M-V-, 22 I. & N. Dec. at 258.

Separately, it is not clear whether Mr. Musau could have petitioned the Eighth Circuit[4] for review of his order of removal, and the parties have not really addressed this point.[5] Specifically, an alien must file a petition for review within thirty days of a final order of removal. 8 U.S.C. § 1252(b)(1). We know that Mr. Musau became aware of the threats against him prior to August 3, 2010, because he discussed those threats in his habeas petition; but we otherwise have no evidence regarding when Mr. Musau became aware of those threats. The threatening phone calls apparently began six days *before* Mr. Musau was ordered

---

[4] Mr. Musau's immigration proceedings took place within the jurisdiction of the Eighth Circuit. We have jurisdiction over this appeal because he filed his habeas petition in Kansas.

[5] The dissent is confident that Mr. Musau could have petitioned the Eighth Circuit for review of his CATOC claim, regardless of whether he presented that claim to immigration authorities. This has not been argued or addressed by Mr. Musau or the government on appeal.

- 6 -

removed, and continued through July; but the phone calls allegedly were made to Mr. Musau's *brother*, rather than to Mr. Musau himself. The record does not indicate when Mr. Musau became aware of the threats and no evidentiary hearing was held. If Mr. Musau was not aware of the threats within thirty days of his removal order becoming final, he apparently could not ask the Eighth Circuit to review his removal order. See id. And filing a motion to reopen or reconsider with the IJ likely would not have helped, as the IJ apparently lacked any authority to do anything about those threats vis-a-vis the CATOC.

Resolution of Mr. Musau's petition would have required the district court to first determine whether it had jurisdiction to consider that petition: whether, assuming Mr. Musau was entitled to any protection under the CATOC, he could pursue relief in immigration proceedings or before the Eighth Circuit. If not, the district court would have had to determine whether Mr. Musau was, in fact, entitled to protection under the CATOC: whether the CATOC creates any rights, and whether Mr. Musau is entitled to protection based on any such rights. The district court was premature in concluding that Mr. Musau could have sought to enforce any rights to which he is entitled before an immigration tribunal without any evidence that immigration tribunals could, in fact, consider CATOC claims. The district court again erred by assuming that Mr. Musau could petition the Eighth Circuit for relief without first evaluating whether Mr. Musau could have filed for such relief as required by statute.

- 7 -

We do not conclude that 8 U.S.C. § 1252(a)(5) unconstitutionally suspends the writ of habeas corpus. Rather, we conclude that the district court has jurisdiction to determine its jurisdiction; it may, and indeed must, determine whether the REAL ID Act, 8 U.S.C. § 1252(a)(5), unconstitutionally suspends the writ of habeas corpus. In making that determination the first time, the district court erred by making two assumptions that are not supported in fact or in law. We therefore remand to the district court with instructions to determine, in order, (1) whether, assuming he is entitled to protection under the CATOC, Mr. Musau could have sought relief from an immigration tribunal or the Eighth Circuit, and (2) whether the CATOC creates any protections and whether Mr. Musau is entitled to relief under any such protections. For purposes of this analysis, wholly discretionary relief (e.g., unreviewable prosecutorial or administrative discretion) appears insufficient to protect any such rights.

The dissent apparently does not disagree that there is nothing in the record to support the idea that immigration tribunals have authority to address CATOC claims. Instead, the dissent's entire premise rests on the assumption that the Eighth Circuit could have reviewed Mr. Musau's petition one way or another, had he simply asked it to do so. That may be true, but that assumption is premature on this record. The district court plainly has jurisdiction to consider its jurisdiction and consider argument and evidence. On remand, the district court must first determine whether Mr. Musau could have pursued his CATOC claim

- 8 -

before immigration tribunals or the Eighth Circuit, and may develop facts as needed to make that determination. If Mr. Musau could not have pursued his CATOC claim in either forum, the district court must then determine whether Mr. Musau is entitled to relief under the CATOC, and, if so, whether the REAL ID Act unconstitutionally suspends the writ of habeas corpus as applied to Mr. Musau.

REVERSED and REMANDED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

No. 11-3105, *Musau v. Carlson, et al.*
O'Brien, Circuit Judge, dissenting:


This decision turns back the clock on the Immigration and Nationality Act

("INA") to a time when chaos reigned—petitioners could choose the forum for

their removal challenge—delay was inevitable (and welcome), and the decisions

were uneven, a piecemeal, dual-track system that gave rise to the 1996

amendments to the INA and, later, the REAL ID Act.  I am compelled to dissent.

The heart of this matter is whether implementation of the Immigration

Statutes according to their terms results in a suspension of the writ of habeas

corpus.[1]  It does not.  I begin by recounting the evolution of the statutes as dictated

by the Supreme Court.  That is followed by a review of the procedural posture of

the case.  Finally, I will explain how the immigration statutes could have provided

Musau a meaningful and adequate opportunity for judicial review of the legal issue

he presents had he made a good faith effort to follow them.

## I.  Legal Background

Before 1996, an alien could challenge a removal order either in the courts of

appeals with a petition for review of executive action, or in the district courts by

way of a petition for habeas relief.  In 1996 Congress made a comprehensive

---

[1] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. Art. I, § 9, cl. 2.

revision of the immigration laws. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), enacted on September 30, 1996, 110 Stat. 3009-546. Along with a host of other changes it consolidated review of final orders of removal in the courts of appeals[2] and, to make that change effective, stripped the district courts of habeas jurisdiction to consider such matters. But, in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court scuttled the jurisdiction-stripping provision because congressional intent was not sufficiently clear. It noted that Congress did not provide an alternative forum for judicial review of the precise legal issues St. Cyr presented in his habeas petition and cautioned about foreclosing habeas remedies without providing a substitute judicial forum for review of the legal issues presented. Doing so, the Court said, would present a "serious Suspension Clause issue." *See Id. at* 305. Wishing to avoid a constitutional problem, it construed the statute as preserving a right to bring removal-related habeas petitions in the district courts. Nevertheless, it left the door open; review by the courts of appeals might be a sufficient substitute for habeas corpus "[i]f it were clear that the question of law could be answered in [that] forum." *Id*. at 314.

---

[2] There are minor exceptions not relevant here.

In response to *St. Cyr*, Congress enacted the REAL ID Act of 2005. Pub. L. No. 119-13, Div. B., 119 Stat. 302. Among other things, it finished the job it started a decade earlier—again routing all removal challenges into the courts of appeals. This time it was emphatically clear; there would be no more district court involvement in the review of removal orders, and specifically not by way of habeas corpus. The REAL ID Act makes a petition for review the "sole and exclusive means" for judicial review of removal orders and gives the courts of appeals exclusive jurisdiction to consider petitions for review of removal orders, notwithstanding "any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). It goes on to provide, with respect to the restrictions on judicial review, that "the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review. . . ." Id.

To address the constitutional concerns raised by the Supreme Court in *St. Cyr*, the REAL ID Act provides for review in the courts of appeals of "constitutional claims or questions of law" raised in a petition for review.[3] Id. § 1252(a)(2)(D). Courts have construed this language as embracing the same types

---

[3] To the limited extent it might inform the debate, the conference report on the REAL ID Act documents Congress's intention to provide removable aliens with judicial review commensurate in scope with habeas corpus, but only in the courts of appeals. H.R. REP. NO. 109-72, 109TH CONG., AT 174.

3

of issues traditionally cognizable under habeas review.  *See, e.g.*, *Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007).

The REAL ID Act has proved resilient in the face of multiple challenges under the Suspension Clause.  Since the law's enactment in 2005, countless petitioners have sought habeas review in the district courts on the theory that the revised INA procedure is inadequate to test the legality of their removal.  *See, e.g. Luna*, 637 F.3d at 87; *Muka v. Baker*, 559 F.3d 480, 483-85 (6th Cir. 2009); *Mohamed*, 477 F.3d at 526.  They have complained about the timing rules, the restrictions on new evidence, the unavailability of equitable tolling, as well as other procedural discrepancies that arguably distinguishes a petition for review from the habeas writ.  Until today, none had succeeded; the courts of appeals considering the issue have all concluded the REAL ID Act provides an adequate substitute for habeas corpus.  *See Luna*, 637 F.3d at 94 ("This Court has construed 'the intent of Congress's restoration under the REAL ID Act rubric of constitutional claims or questions of law to encompass the same types of issues that courts traditionally exercised in habeas review over Executive detentions.");  *Mohamed*, 477 F.3d at 526 ("[The REAL ID Act affords] a remedy as broad in scope as a habeas petition.");  *Muka*, 559 F.3d at 485 (same);  *Kolkevich v. Att'y Gen. of United States*, 501 F.3d 323, 332 (3d Cir. 2007) ("There is no question that

the current regime, in which aliens may petition for review in a court of appeals but may not file habeas, is constitutional."); *Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) (same); *Alexandre v. United States Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) ("[The petition for review] offers the same review as that formerly afforded in habeas corpus which provided legal, but not factual or discretionary, determinations.")

It comes down to this. Irrespective of the reach of the writ of habeas corpus, Congress may suspend it provided it creates a substitute remedy adequate to test the legality of the alien's detention. *Swain v. Pressley*, 430 U.S. 372, 381 (1977). In considering the adequacy of substitute remedies, the Supreme Court has distinguished statutes circumscribing habeas review from those merely streamlining it. *See Boumediene v. Bush, 553 U.S. 723, 776-77 (2008).* With respect to statutes in the latter category, structural reforms intended to simplify or expedite the functional equivalent of habeas review are permitted provided they leave the substance of the remedy intact. *Id.* In *United States v. Hayman*, for instance, the Supreme Court decided Congress could lawfully replace traditional habeas review for federal prisoners with a procedure allowing them to raise legal challenges to their criminal judgment in a motion to the sentencing court under 28 U.S.C. § 2255. 342 U.S. 205, 223-24 (1952). Section 2255 was enacted to address procedural difficulties with the administration of habeas review in federal district

courts. It improved the process by routing challenges to a conviction or sentence from a possibly remote court into the sentencing court where the facts of the case are familiar. As the Court observed, "the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Id*. at 219. Similarly, in *Swain*, the Court concluded Congress did not violate the Suspension Clause by requiring prisoners sentenced in the Superior Court of the District of Columbia (SCDC) to seek collateral review there rather than the federal district court, the traditional forum for such claims. 430 U.S. at 374-78. Since it had no reason to doubt the SCDC's competency to conduct collateral review, and since the scope of that review was commensurate with habeas corpus, the Supreme Court rejected the Suspension Clause challenge. *Id*. at 384.

As a substitute for the inefficiencies of habeas review in immigration cases Congress invested the courts of appeals with plenary authority and responsibility to review legal issues relating to removal orders. Musau prefers what is, for him, a more convenient path. Unfortunately, his efforts have met with success.

## II. Procedural Background

Immigration and Customs Enforcement (ICE) commenced removal proceedings against Musau by serving him with a notice to appear. On March 18, 2010, he appeared as directed and conceded removability. He requested voluntary

6

departure, which the immigration judge (IJ) granted; alternatively he was required to be removed to Kenya. He made no mention of threats against him or the CATOC.[4]

In spite of his request for voluntary departure, Musau failed to depart on July 16, 2010, as required. Even though he could have timely done so, he made no attempt to avail himself of extant procedural remedies in the immigration court to reconsider the removal order or reopen the case to address newly discovered evidence, such as threats to do him harm. Nor did he seek relief from elsewhere

---

[4] The pertinent portion of the CATOC is Article 24, which concerns protection of witnesses. It provides:

1. Each State Party shall take appropriate measures within its means to provide effective protection from potential retaliation or intimidation for witnesses in criminal proceedings who give testimony concerning offences covered by this Convention and, as appropriate, for their relatives and other persons close to them.

2. The measures envisaged in paragraph 1 of this article may include, inter alia, without prejudice to the rights of the defendant, including the right to due process:

> *(a)* Establishing procedures for the physical protection of such persons, such as, to the extent necessary and feasible, relocating them and permitting, where appropriate, non-disclosure or limitations on the disclosure of information concerning the identity and whereabouts of such persons;
> *(b)* Providing evidentiary rules to permit witness testimony to be given in a manner that ensures the safety of the witness, such as permitting testimony to be given through the use of communications technology such as video links or other adequate means.

3. States Parties shall consider entering into agreements or arrangements with other States for the relocation of persons referred to in paragraph 1 of this article.

4. The provisions of this article shall also apply to victims insofar as they are witnesses.

Convention against Transnational Organized Crime, art. 24, Nov. 15, 2000, 2225 U.N.T.S. 209 (Treaty No. I-39574).

within the Department of Justice. Instead, on August 16, 2010, he filed this habeas petition, raising for the first time his claimed fear of returning to Kenya and his need for protection from criminal elements arising from his cooperation with law enforcement officials in 2007. His prayer for relief reads:

> [P]etitioner hereby requests this court to grant the following relief:
> (1) Recognize jurisdiction over this case;
> (2) Issue a judgment declaring that the removal of Petitioner from the United States to Kenya violates the Convention Against Transnational Organized Crime, the U.S. Constitution, and international law as alleged herein;
> (3) Issue an order allowing Petitioner to review any and all information concerning himself provided by ICE and/or DHS, or by any other agent or agency of the United States Government, to the Government of Kenya;
> (4) Issue an order allowing Mr. Musau to remain in the United States with his family, free of detention, until a final administrative and judicial decision has been made on his application for protection under the Convention Against Transnational Organized Crime;
> (5) Issue an order providing for an award of attorneys' fees and costs; and
> (5) [sic] Provide for such other relief as may be just and reasonable.

The district court specifically addressed his Suspension Clause arguments,[5] saying: "Section 1252(a)(5) does not strip all alien rights to habeas review of

---

[5] Generally, and particularly in this case, subject matter jurisdictional issues must be resolved before considering the merits of a claim. *See*, *e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S, 83, 99 (1998); *Butler v. BioCare Med. Tech*, 348 F.3d 1163, 1166 (10th Cir, 2003). The district court confronted Musau's constitutional challenge to the REAL ID Act straight on, devoting nearly four pages of its order to explaining how the Act provides an adequate substitute for habeas corpus and, accordingly, why there is no Suspension Clause problem.

8

removal orders; it requires them to consolidate all claims in one forum, i.e. the court of appeals. This statutory scheme provides an adequate substitute for habeas review by allowing judicial review of final orders of removal in the courts of appeals.  As such, Section 1252 does not unconstitutionally suspend the writ of habeas corpus." (Musau, slip op. at 9) (internal citations omitted).  It also addressed  his claim that, absent habeas, there was no forum where he might apply for witness protection under the treaty.  "On this record, petitioner has not shown that no forum exists to raise his CATOC claim." *Id.* at 12.  Since Musau had a forum in which to present his claims (one of the courts of appeals), it decided §1252(a)(5) did not suspend the writ and, accordingly, dismissed the habeas petition because it was without jurisdiction to consider it on the merits.  8 U.S.C. § 1252(a)(5) and (b)(9).

The majority opinion identifies the district court's presumed error:

The district court was premature in concluding that Mr. Musau could have sought to enforce any rights to which he is entitled before an immigration tribunal without any evidence that immigration tribunals could, in fact, consider CATOC claims.  The district court again erred by assuming that Mr. Musau could petition the Eighth Circuit for relief without first evaluating whether Mr. Musau could have filed for such relief as required by statute.  (Majority Op. at 8).

And it prescribes the antidote:

We therefore remand to the district court with instructions to

determine, in order, (1) whether, assuming he is entitled to protection under the CATOC, Mr. Musau could have sought relief from an immigration tribunal or the Eighth Circuit, and (2) whether the CATOC creates any protections and whether Mr. Musau is entitled to relief under any such protections. For purposes of this analysis, wholly discretionary relief (e.g., unreviewable prosecutorial or administrative discretion) appears insufficient to protect any such rights. (*Id.*).

### III. Discussion

I respectfully disagree with the majority decision and its approach to the issues presented. Factual findings are unnecessary; we are confronted with pure legal questions—whether a court of appeals could have considered Musau's CATOC claim and, if so, whether that access to the courts is sufficient to prevent a suspension of the writ problem. Even if we were to assume factual findings are necessary, existing procedures afford a reviewing court of appeals sufficient means to accommodate that need. The district courts have no habeas jurisdiction and their interference is unnecessary, even unproductive.

In proceeding under 28 U.S.C. § 2241, Musau did precisely what the REAL ID Act says he cannot do—seek habeas relief from a final order of removal. The district court was required to dismiss the petition unless doing so would deny Musau the minimum level of judicial inquiry required by the Suspension Clause. Nothing short of a constitutional problem could justify ignoring the § 1252(a)(5) jurisdictional bar. *See Swain*, 430 U.S. at 381. Either the bar is unconstitutional as

applied to Musau's petition, making habeas review proper, or the bar is constitutional, leaving the district court without jurisdiction. Musau properly recognized the issue—his habeas petition claims the immigration law affords him no effective means of obtaining a judicial determination of the rights he may have under the CATOC, and that failure amounts to a suspension of the writ. On appeal, he continues that refrain.[6]

The Suspension Clause ensures that "some judicial intervention in deportation cases is unquestionably required by the Constitution." *St. Cyr*, 533 U.S. at 300-01 (quotations omitted); *see also Boumediene*, 553 U.S. at 773-75. The Supreme Court has not precisely defined the level of judicial intervention required, but it did recall that such review historically embraced questions of law, including "the erroneous application or interpretation of statutes," challenges to

---

[6] Musau summarizes his argument on appeal as follows:

I. The Statute Prohibiting Habeas Review Suspends the Writ of Habeas Corpus Without an Adequate Alternative for Individuals Seeking Protection Under the CATOC.
A. Statement of Law Regarding Habeas Corpus.
B. The Statute Suspends the Writ of Habeas Corpus.
C. No Alternative Forum Exists For an Alien to Bring a Claim For Protection Under the CATOC.
D. Because No Alternative Forum is Available for Mr. Musau's Claim, suspension of the Writ is Unconstitutional, and the District Court Retained Jurisdiction.
(App. Op. Br. at 4-5.)

11

"Executive interpretations of the immigration laws," and "questions of law that arose in the context of discretionary relief." *St. Cyr*, 533 U.S. at 302, 307. Those observations should have framed the inquiry here.

Musau contends a petition for review is not an adequate substitute for habeas in this case because the Attorney General has not delegated authority (assuming such authority exists) to the immigration courts to adjudicate claims under the CATOC.[7] Although he does not say so expressly, his argument appears to embrace the related (and necessary) contention that the courts of appeals are powerless to consider claims beyond the ken of the immigration courts. He is wrong.

Existing law and procedure afford Musau not only a judicial forum for airing his complaints, but also an effective remedy for a demonstrated violation of law. He chose not to avail himself of the established procedure. Since the jurisdiction of the immigration courts depends upon delegated authority from the Attorney General, *see Matter of H-M-V*, 22 I. & N. Dec. 256, 258 (BIA 1998), he conveniently decided it would have been futile to present his claim to an entity

_____

[7] It is not necessary to address the contentious issue of whether the CATOC creates rights enforceable in the immigration context. Nor is it necessary to address what I perceive as the government's argument that Musau's fears of retaliation could have been remedied by seeking asylum or relief under the Convention Against Torture. Our only concern is whether a court of appeals could have addressed and resolved those issues.

powerless to address it.[8]  A habeas petition may well be more expeditious for an alien under a deportation order because it avoids the sometimes tedious path of agency adjudication followed by appropriately deferential judicial review. Nevertheless, the proper path begins, but does not necessarily end, in the immigration courts.  If Musau could not obtain relief at the agency level, he would still have had a forum to present his CATOC claim for consideration by the Eighth Circuit,[9] under the provision allowing for review of "questions of law."  *See* 8 U.S.C. § 1252(a)(2)(D).  And the courts of appeals can afford complete relief in appropriate cases, as detailed in 8 U.S.C. § 1252(b) and 28 U.S.C. § 2342.  In *Boumediene* the Supreme Court observed, with respect to suspension of the writ arguments, "[w]hat matters is the sum total of procedural protections afforded to the detainee at all stages, direct and collateral."  553 U.S. at 783.  We need to keep

---

[8] Musau's argument is exceedingly narrow—too narrow.  It seems to be that if he brought his CATOC claim to the immigration court, then the IJ or, on review, the Board of Immigration Appeals would dismiss for lack of jurisdiction to decide the claim, which may be true.  And, his argument continues, if he were to seek review of the agency's jurisdictional decision , a court of appeals would only review the jurisdiction question and would never reach the merits of his treaty claim. The latter link of his argument chain is demonstrably wrong.

[9] Although Musau filed his habeas petition in the federal district of Kansas, his immigration hearing was conducted in Kansas City, MO, the nearest immigration court.  Accordingly, had Musau petitioned for review from his final order of removal, he would have been required to do so in the Eighth Circuit.  *See* 8 U.S.C. § 1252(a)(5).

our eye on the ball—the total procedural protection put in place by the REAL ID Act, not merely the role of the immigration court.

Musau's assertion that federal appellate courts lack jurisdiction to consider claims beyond the ken of the agency is incorrect. Nothing in the statute suggests Congress intended to preclude courts of appeals from reviewing claims outside the adjudicatory authority of the agency. If anything, granting authority to review "constitutional claims or questions of law" 8 U.S.C. § 1252(a)(2)(D) is potent evidence of the opposite intention, as many constitutional claims *are* outside the adjudicatory scope of the agency. *See Morgan v. Gonzales*, 495 F.3d 1084, 1090 (9th Cir. 2007) (agency lacks power to grant relief over due process and equitable estoppel claims); *Pasha v. Gonzales*, 433 F.3d 530, 536 (7th Cir. 2005) ("[The BIA] refused to adjudicate the constitutionality of the statutes under which it operates. . . ."); *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) ("Retroactivity challenges to immigration laws implicate legitimate due process considerations that need not be exhausted in administrative proceedings because the BIA cannot give relief on such claims."); *In re L-S-J*, 21 I. & N. Dec. 973, 974 (BIA 1997). It is inconceivable that Congress, in providing for review of "constitutional claims" by the courts of appeals, intended to confine such review to the infinitely small subset of such claims that can actually be brought before the agency.

Assuming the improbable (that the statutes are ambiguous as to the scope of judicial review) does not aid Musau's cause. If a statute admits of two possible interpretations, one rendering the statute constitutional and one rendering it unconstitutional, we are obliged to take the first course. *Nat'l Fed. of Indep. Bus. v. Sebelius*, --- S. Ct. ---, 2012 WL 2427810, at *23 (June 28, 2012). Here, to avoid a suspension of the writ problem, we must take an expansive view of the constitutional and statutory issues a court of appeals can address on a petition for review and the methods by which that review can be accomplished. Not only is such a view necessary to avoid constitutional problems, but it implements the congressional intent evident in the text, structure and quite evident purpose of the relevant statutes. 8 U.S.C. § 1252(a) (judicial review of removal orders is governed by 28 U.S.C. § 2341, et seq.); 28 U.S.C. § 2342 (courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of [final orders of the immigration courts]."

Musau seems to be working under the assumption that a claim outside the agency's jurisdiction cannot be raised in a petition for review because it would arrive in the court of appeals without the necessary factual development.[10] But this

---

[10] This may explain why he spends so much time addressing the obstacles to relief at the agency level and so little time discussing his potential remedy in the court of appeals.

15

assumption would be incorrect. *See* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies *available to the alien as of right . . . .*" (emphasis supplied). If Musau correctly suspected his claim could not be adjudicated at the agency level, he could have bypassed the immigration courts and petitioned the Eighth Circuit directly, claiming exhaustion would have been futile. *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 874 (10th Cir. 2007) ("Exhaustion is not required where it would be futile or fail to provide adequate relief.") (quotation omitted); *Schmitt v. Maurer*, 451 F.3d 1092, 1095 (10th Cir. 2006) ("[The exhaustion rule] does not prevent a court from reviewing a final order of removal where there are no administrative remedies available."); *Frango v. Gonzales*, 437 F.3d 726, 729 (8th Cir. 2006); *Sousa v. INS*, 226 F.3d 28, 32 (1st Cir. 2000) (holding that exhaustion can be circumvented where "resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor."); *see also Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001).

In the event an administrative record was unavailable—the result, presumably, of the agency's refusal to entertain the claim—judicial review would have been proper under the Hobbs Act, 28 U.S.C. § 2347(b)(3), which governs appellate review of administrative orders resulting from proceedings in which no hearing took place. The Hobbs Act authorizes the courts of appeals to transfer a

16

case to the district court for an evidentiary hearing where there are genuine issues of material fact and an administrative hearing is not required by law.[11] *Id.* The appropriateness of such a transfer depends on the legal sufficiency of the claim— that is, on whether the petitioner has, on the facts alleged, presented a "colorable" legal argument. *See Morgan*, 495 F.3d at 1090. Petitioners presenting colorable claims for relief have a right to an evidentiary hearing, and the transfer procedure gives effect to that right in cases where the claim could not be asserted before the agency. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 496-97 n.2 (1999) (Ginsburg, J. concurring); *Morgan*, 495 F.3d at 1090; *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001); *Coriolan v. INS*, 559 F.2d 993, 1003 (5th Cir. 1977) (overruled on other grounds); *see also Gulf Power Co. v. INS*, 187 F.3d 1324, 1335 (11th Cir. 1999); *Exportal Ltda v. United States*, 902 F.2d 45, 48 n.3 (D.C. Cir. 1990); *Radio Relay Corp. v. FCC*, 409 F.2d 322, 329-30 (2d Cir.

---

[11] Where an administrative hearing is required by law, the proper course is remand to the agency. *See* 28 U.S.C. § 2347(b)(2). But if the agency is without jurisdiction to hear claims under the CATOC, which I assume for the purpose of this analysis, Musau's claim could have been transferred to the district court rather than remanded to the agency. In either case, however, § 2347 would have afforded an adequate substitute by providing Musau an opportunity to bring forth evidence to substantiate his legal claim.

17

1969); *Lake Carriers' Ass'n v. United States*, 414 F.2d 567, 568 (6th Cir. 1969).[12] The transfer procedure is in keeping with the Supreme Court's admonition that petitioners are entitled to "careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts," and that even where Congress has been silent on "methods for securing facts," federal courts would have an "inescapable obligation" on certain occasions to order discovery. *Harris v. Nelson*, 394 U.S. 286, 299 (1969).

Taken together, the procedures in the Hobbs Act and the INA offered Musau a fair opportunity to test the legality of his removal. Undoubtedly, adjudicating claims not asserted to the agency presents the court of appeals with procedural challenges concerning the resolution of material facts. *See Morgan*, 495 F.3d at 109. However, in fashioning a system substituting for habeas, Congress is constrained only by its obligation to ensure the available remedies are not meaningfully more limited than would be available in habeas review. *See Swain*, 430 U.S. at 381.

---

[12] The Hobbs Act provides an appropriate procedure for finding facts in the absence of an administrative record, but it does not provide the only procedure. Federal Rule of Appellate Procedure 48, which allows the courts of appeals to appoint a special master to hold hearings and make recommendations relating to his findings, stands out as a feasible alternative. *See F.C.C. v. ITT World Comm.*, 466 U.S. 463, 469 (1984). In any event, I am confident the Eighth Circuit, sensitive to the necessity of a full judicial inquiry, could have made provision for fact finding.

In this case, Musau could have challenged his removal by presenting a colorable legal claim to the court of appeals, substantiated by affidavit(s). If there were no material factual disputes, the court could then decide the extent of Musau's constitutional, statutory or treaty rights. If factual disputes were evident, they could first be determined by the district court in a transfer proceeding. In any event, his remedy would have been commensurate with habeas corpus in all respects save for the use of the appellate court as a screening body to determine the sufficiency of the claim, a difference which goes more to form than substance. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (holding that AEDPA gatekeeping rule restricting petitioners' ability to bring new claims in successive habeas actions does not suspend the writ because the provision "simply transfers from the district court to the court of appeals a screening function which would have previously been performed by the district court [under 28 U.S.C. § 2254].").  Much like the procedures the Supreme Court upheld in *Swain* and *Hayworth*, this procedure ensures appropriate judicial review by a court of appeals, as Congress intended. Since the scope of the remedy was functionally equivalent to habeas corpus, the additional procedural step would not have raised the "serious constitutional question" presented by a law precluding judicial review altogether. *See Thunder Basin Coal Co. v. Raich*, 510 U.S. 200, 215 n.20 (1994); *Moralez-Izquierdo*, 600

19

F.3d 1084, 1085 (9th Cir. 2010) ("The mere possibility that a challenge might require further fact-finding does not require habeas corpus jurisdiction.").

The Supreme Court recently reinforced this point in *Elgin v. Dep't of the Treasury*, where it concluded there was nothing "extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain." 132 S. Ct. 2126 (2012). *Elgin* holds that the Civil Service Reform Act (CSRA) provides the exclusive framework of judicial review for federal employees challenging adverse employment actions, even when their challenge raises constitutional claims outside the statutory authority of the Merit Systems Protection Board (MSPB), the body charged with adjudicating the employment disputes at the administrative level. *Id.* at 2138. In those cases, the Court explained, the employees can still raise a constitutional challenge in the Federal Circuit, which, like the courts of appeal in the immigration setting, has virtually plenary authority to review questions of law. *Id*. at 2138-39.

The Court acknowledged the review process may be more involved in cases where an employee raises a constitutional challenge, requiring the Federal Circuit to consider the constitutional question for the first time on appeal from the MSPB, only to send the case back to the MSPB in the event that factual development is necessary. But the prospect of an extra procedural step was not enough to

20

persuade the Court that the CSRA scheme is unworkable in constitutional cases. For one thing, the CSRA's objective of creating an integrated scheme of review would be "seriously undermined if, as petitioners would have it, a covered employee could challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional." *Id*. at 2135. For another, the Federal Circuit is "fully capable of providing meaningful review of petitioners' claims." *Id*. at 2133. Just as the Hobbs Act provides a mechanism for factfinding in the immigration setting, the CSRA "accommodates an employee's potential need to establish facts relevant to his constitutional challenge" by empowering the MSPB to develop a factual record for the Federal Circuit. *Id*. at 2138.

The majority worries, unnecessarily in my view, that the record is unclear as to when Musau became aware of the threats to his safety.

> The threatening phone calls apparently began six days *before* Mr. Musau was ordered removed, and continued through July; but the phone calls allegedly were made to Mr. Musau's *brother*, rather than to Mr. Musau himself. The record does not indicate when Mr. Musau became aware of the threats and no evidentiary hearing was held. If Mr. Musau was not aware of the threats within thirty days of his removal order becoming final, he apparently could not ask the Eighth Circuit to review his removal order. See id. And filing a motion to reopen or reconsider with the IJ likely would not have helped, as the IJ apparently lacked any authority to do anything about those threats vis-a-vis the CATOC.

(Majority Op. at 7) (emphasis in original).

21

It seems to assume the closing of the time within which to seek review of a removal order somehow entitles an immigrant to habeas relief. But the passing of a limitations period does not amount to a suspension of the writ. For instance, a motion to reopen is barred if filed more than 90 days after a removal order is entered. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). In any event Musau could have filed a timely petition to reopen with the immigration court. If his petition were to have been denied he could have sought judicial review of the denial, *Infanzon v Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004) (petition to reopen is a separate, appealable order), opening the issue and all it might entail for review by the Eight Circuit. Musau claims the motion to reopen statute is subject to manipulation by the government and thus cannot be an adequate substitute for habeas review, citing *Boumediene*, 553 U.S. at 765-66, and Tenth Circuit cases, since overruled, imposing the bar. This court has invalidated the departure bar. *Contreras-Bocanegra v. Holder*, 678 F.3d 811 (10th Cir. 2012) (en banc) (overruling *Rosillo-Puga v. Holder*, 580 F.3d 1147 (10th Cir. 2009) and *Mendiola v. Holder*, 585 F.3d 1303(10th Cir. 2009). In any event those are legal issues we could and should address, if necessary, rather than remanding to the district court.

Musau had two pathways to relief under the INA's statutory scheme: 1) He could have petitioned for relief from the agency and then sought judicial review of an unfavorable decision (by the Eighth Circuit) or, 2) he could have bypassed the

22

immigration court and proceeded directly to the circuit court claiming that trying to exhaust unavailable remedies would be futile and therefore unnecessary.[13] In either event, the Eighth Circuit would have had jurisdiction to review the petition and grant appropriate relief. It could have, for example, enjoined removal until it could resolve his rights, if any, under the CATOC. 28 U.S.C. § 2342. If it were to determine that he had enforceable rights under the treaty it could have enjoined removal until they were honored by the government. *Id.*[14]

By reinstating habeas review for Musau, the majority opens the district court doors for similarly situated aliens seeking to challenge their removal based on theories that cannot be asserted in the immigration courts. The list of claims the agency cannot adjudicate is considerably longer than the list of claims it can, and examples of claims outside the agency's jurisdiction abound in the case law. Most

---

[13] The majority criticizes the district court for suggesting *Rranci v. Attorney General*, 540 F.3d 165 (3d Cir. 2008), demonstrates that immigration tribunals have some authority to consider and resolve CATOC claims. (Majority Op. at 6). Even if the district court was wrong in its assessment or there might be some debate about the propriety of the remedy chosen by the Third Circuit, the case makes my point. Given the opportunity, circuit courts have the authority to, and will, address claims such as Musau's treaty arguments. Congress has provided an effective substitute for habeas. There has been no suspension of the writ. It makes another point, as well: petitioners should be required to at least try to use existing procedures before filing habeas petitions simply supposing they have no other remedy.

[14] Musau decided to roll the dice with his habeas petition. It may now be too late to seek relief from the immigration court. *Alea iacta est.*

23

fit under the heading of "constitutional claims," which includes claims for relief based on due process, equal protection, ineffective assistance of counsel, and various other theories. *See, e.g.*, *Morgan*, 495 F.3d at 1090; *Pasha*, 433 F.3d at 536. But the immigration courts are also without jurisdiction to consider equitable theories and facial attacks on the INA, to say nothing of more novel theories, like Musau's CATOC claim, for which jurisdiction has not been delegated by the Attorney General. *In re H-M-V-*, 22 I. & N. at 258. Under the majority's reasoning, all of these theories would be amenable to habeas review, and the district courts would be re-vested with jurisdiction to entertain them.

The judgment of the district court should be affirmed.